331 So.2d 280

**VULCAN LIFE INSURANCE CO. and Life Insurance Co. of Georgia**

v.

**Doris Y. McDUFFIE.**

**Civ. 624.**

Court of Civil Appeals of Alabama.

Feb. 4, 1976.

Rehearing Denied March 17, 1976.

Holberg, Tully, Holberg & Morgan, Mobile, for appellants.

Johnston, Johnston & Kendall, Mobile, for appellee.

BRADLEY, Judge.

James Harold McDuffie was shot to death on October 13, 1972. On November 8, 1974 his widow, Doris Y. McDuffie, filed this action in the Circuit Court of Mobile County against defendants Vulcan Life Insurance Company and Life Insurance Company of Georgia. Her complaint alleged that defendants had insured the life of her husband against accidental death in amounts totalling $4,500; that such policies were in force on the date of insured's death; that plaintiff is the beneficiary of those policies; and that the insured's death was accidental.

In their answers both insurers admitted that the policies were in effect on the date of insured's death. Both companies denied that the death was "accidental" under the specific terms of the respective policies; both also pleaded accord and satisfaction based on purported releases executed by plaintiff on the 19th and 25th of October, 1972.

Trial was had before a jury. Defendants moved for directed verdict at the conclusion of plaintiff's evidence and at the conclusion of all the evidence. Both motions were denied and the jury rendered a verdict for plaintiff in the amount of $4,500. Motion for new trial was denied and this appeal resulted.

The facts show that plaintiff's husband obtained three life insurance policies from defendant Life Insurance Company of Georgia. These policies provided that the insurer would pay twice the face amount if the insured lost his life by external and accidental means. Under "Exceptions and Limitations," the policies provided that no accidental benefit would be paid if death was due to injuries occurring while insured was committing or attempting to commit an illegal act, or to "injuries intentionally inflicted upon the insured either by himself or by another person."

The insured also had in force at the time of his death, three life policies issued by defendant Vulcan Life Insurance Company. These policies also provided for double accidental death benefits. Accidental death was defined in the policies as death due to accidental injury, which was in turn defined as "any bodily injury effected solely through violent, external and accidental means." The Vulcan policies also provided that no accidental death benefit would be paid should death result wholly or in part while insured was committing or attempting to commit an assault or felony or if his injuries were "intentionally inflicted by another person."

■ Defendants' first motion for directed verdict came at the close of plaintiff's case. This motion was denied. Defendants then put on their own evidence, and, under federal authority, thereby waived any possible error in the denial of the motion, *Hansen v. Boyd,* 161 U.S. 397, 16 S.Ct. 571, 40 L.Ed. 746. This conclusion is consistent with the principle in Alabama that plaintiff is entitled to any favorable inferences to be drawn from de-

fendant's evidence, *Stewart Bros. v. Ransom,* 200 Ala. 304, 76 So. 70. In the instant case, defendants made a second motion for directed verdict at the close of all the evidence. In ruling on this latter motion, the trial court must consider the evidence introduced by both parties to determine whether the case is for the jury, *Auto Transport v. Potter,* 197 F.2d 907 (8 Cir. 1952). Applying this analysis, we hold that the trial court erred in denying the second motion for directed verdict.

■ At the close of plaintiff's case the insurance policies themselves and a coroner's certificate that Mr. McDuffie had died as a result of homicide constituted all of the evidence introduced relating to cause of death. With the evidence in this posture, plaintiff had made out a prima facie case of accidental death.

■ In *Provident Life & Accident Ins. Co. v. Hanna,* 294 Ala. 37, 311 So.2d 294, the supreme court quoted the following statement from *O'Bar v. Southern Life & Health Ins. Co.,* 232 Ala. 459, 168 So. 580 which promulgates the test for determining whether a death is accidental:

> "To constitute an accidental death, it must have resulted from something unforeseen, unexpected, and unusual. *Carroll v. Fidelity, etc., Co.,* supra, [4 Cir., 137 F. 1012], or 'which happens as by chance, or which does not take place according to the usual course of things,' or 'without foresight or expectation' or 'by reason of some violence, casualty, or vis major to the assured, without his design or consent or voluntary cooperation.' *Equitable Accident Ins. Co. v. Osborn,* 90 Ala. 201, 206, 9 So. 869, 870, 13 L.R.A. 267."

And in *Aetna Life Ins. Co. v. Beasley,* 272 Ala. 153, 130 So.2d 178, our supreme court adopted the following language from *Mutual Life Ins. Co. of New York v. Sargent,* 51 F.2d 4 (5th Cir. 1931):

> "Upon the matter of proof it is the law, though there are one or two authorities contra [citing cases], that while the burden is upon plaintiff in cases of this kind to prove death resulting from external, violent and accidental means, proof without more that insured was killed by another raises the presumption that death was accidental, and makes out a prima facie case in the absence of evidence to the contrary. [Citing cases.]"

■ The coroner's certificate in this instance is presumptive evidence that insured was killed by another person, *United Security Life Ins. Co. v. Clark,* 40 Ala.App. 542, 115 So.2d 911, cert. den. 271 Ala. 700, 123 So.2d 19. Under the above-quoted tests for establishing accidental death, the coroner's certificate satisfied plaintiff's initial burden of proof.

Furthermore, the certificate alone does not show that defendants' exclusionary clauses are applicable.

■ The word "homicide" appearing on the certificate does not equate with the intentional infliction of fatal injury on which the policy exclusions are based. Title 14, § 320, Code of Alabama 1940, establishes the crime of second-degree manslaughter: it is not a crime requiring intent to kill, *Duncan v. State,* 30 Ala.App. 356, 6 So.2d 450, cert. den. 242 Ala. 329, 6 So.2d 454, yet it is a "homicide", subsumed under that rubric by its placement in Chapter 49, Title 14 of the Alabama Code. Viewed in its statutory context, the coroner's report leaves open the possibility that the insured died as the result of an unintended act of another person. The defendants' first motion for directed verdict was therefore properly denied, defendants' waiver of this issue notwithstanding.

■ The defendant insurance companies then had the burden of establishing that the insured's death was not to be treated as accidental. Under the express terms of the policies this could be accomplished by showing that death was the result of injury intentionally inflicted by another.

The evidence for the defendants consisted of the testimony of Mr. and Mrs. Benjamin Miller, the only eyewitnesses to the insured's death. Their uncontradicted testimony revealed the following:

On October 13, 1972 insured left his home to visit a friend—an elderly woman confined to a wheelchair. During the time that insured was at the friend's house, her daughter and her daughter's husband, Mr. and Mrs. Benjamin Miller, came in and went to a bedroom. Mrs. Miller stated that she was not feeling well and wanted to lie down. She and her husband went to their bedroom and, according to his testimony, Mr. Miller was sitting on the edge of the bed on which his wife was reclining when in walked the insured. The insured sat down in a chair that he had brought with him and started to make lewd and suggestive remarks to Mrs. Miller. According to testimony of both Mr. and Mrs. Miller, they asked the insured to shut up and go back to the kitchen where her mama was sitting and leave them alone. Insured refused and was then told that if he not shut up and leave, they would call the police.

Upon insured's failure to comply with their request to leave, the couple got up to go call the police. As Mrs. Miller, who was walking in front of her husband, approached the bedroom doorway, the insured picked up the chair in which he was sitting and struck her across the back, knocking her into a stereo and TV sitting next to the doorway. As she was getting up, she took a .22 caliber revolver out from under the stereo and fired once into the ceiling. As Mrs. Miller stood up, the insured struck her again with the chair, knocking her down. As she was getting up the second time, she fired the pistol into the door. Mr. Miller then told insured not to hit his wife again. The insured once more drew back the chair as if to strike her, and Mr. Miller took the gun out of his wife's hand and shot the insured in the chest. The insured was dead on arrival at the hospital. Mr. and Mrs. Miller were the only witnesses to the altercation. This uncontradicted evidence established that insured's death was intentionally caused by Benjamin Miller. With this proof, the defendants had met their burden of showing that the death was excluded from coverage as an accidental death.

The burden then shifted back to the plaintiff to go forward with evidence which would cast doubt on or explain defendants' evidence in a manner consistent with an inference that the death was accidental:

"'If however, defendant makes proof that the death occurred as the result of an affray or an encounter, then it is incumbent upon the deceased (this should read 'plaintiff') to take the initiative again and show by other evidence that the death was accidental. [Citing cases] . . . . In each case if there is any issue of fact as to how the matter occurred, and as to what ought to have reasonably been expected as likely to ensue, the matter is for the jury. [Citing cases].'" *Aetna Life Insurance Company v. Beasley, supra.*

Plaintiff failed to meet this burden. There was no further proof on plaintiff's part showing or attempting to show that death resulted from accidental means; therefore the uncontradicted evidence showed that death was intentionally inflicted, and plaintiff failed to carry its burden of proving that insured's death was an accident. As a matter of fact, the sum total of all the evidence both for plaintiff and defendants proved that insured died as a result of injuries intentionally inflicted by another person. In such a case there is no room for the jury to draw a contrary inference, *Woodward Iron Co. v. Goolsby*, 242 Ala. 329, 6 So.2d 11. Defendants' motion for directed verdict at the close of all the evidence should have been granted.

There being error in the denial of defendants' second motion for directed verdict, the judgment below is reversed and the case remanded to the trial court for entry of a verdict and judgment consistent with our present opinion.

REVERSED AND REMANDED.

WRIGHT, P. J., and HOLMES, J., concur.