This is an appeal from a declaratory judgment which afforded insurance defense and coverage to the estate of the insured, Wayne Dyer, in a wrongful death action brought by the estate of his brother William, based upon the trial court's finding that Wayne's shooting of his brother William was neither "expected nor intended from the standpoint of the insured."
Alabama Farm Bureau Mutual Casualty Insurance Company, Inc. (Farm Bureau) issued a homeowner's policy to Wayne Dyer which contained the following exclusion:
"This policy does not apply:
. . . .
 1. Under Coverage E — Personal Liability and Coverage F — Medical Payments to Others:
 f. to bodily injury or property damage which is either expected or intended from the standpoint of the Insured."
On the afternoon of August 13, 1980, the insured, Wayne Dyer, and his friend Tommy Long purchased vodka and orange juice and arrived at Wayne's home to cook on an outdoor grill. Wayne saw his brother William, who lived next door, return from work and asked William to accompany him to check some fish traps. William agreed and walked over to Wayne's house where another friend, Robert McKinney, subsequently arrived. The four men then checked the fish traps. Upon their return to Wayne's house, Robert McKinney left to go home.
After McKinney left, Wayne, William, and Tommy Long sat at the picnic table in Wayne's backyard and began drinking vodka. When William asked Wayne to pass him the vodka, Wayne called his brother a "mooch." The brothers then began arguing about a water ski which Wayne had previously sold to William for $20.00. William wanted his money back and walked to his house next door to get the water ski to return to Wayne. While William was gone, Long went inside Wayne's house and began eating dinner. Wayne followed Long *Page 923 
into the house but walked to the back of the house alone.
William then returned to Wayne's house with the water ski. Wayne met his brother in the same room where Long was eating dinner. William asked Wayne to refund his $20.00, and Wayne then laid his billfold on the table and removed a twenty-dollar-bill which he offered to his brother. At this point, William declined to take the money and said that he would talk to Wayne in the morning when they were sober. Wayne then pulled a .38 revolver from his right rear pocket, pointed the gun at his brother, and pulled the trigger. The gun fired, fatally wounding William. Within moments, Wayne placed the gun to his head, pulled the trigger, and died shortly thereafter from the self-inflicted gunshot wound.
Following William's death, Gracie Ann Dyer, as administratrix of his estate, filed a wrongful death action against the estate of Wayne Dyer. Farm Bureau filed this declaratory judgment action to determine its obligation, if any, to defend and provide coverage to the estate of Wayne, its insured, in the wrongful death action.
At trial without a jury, Tommy Long and Robert McKinney testified that the Dyer brothers had a good relationship and had been laughing and talking on the day in question. Long also testified that he witnessed the incident and remained seated at the dinner table during the altercation because there was nothing unusual about the argument or the fact that Wayne pointed a gun at his brother. Long also testified that Wayne was in a state of shock following his brother's shooting and instructed him to call an ambulance for his brother William.
An investigator for the Franklin County District Attorney's Office testified that the weapon which killed both Wayne and William Dyer was a six-shot .38 revolver which had been loaded with three shells in successive chambers, with a spent shell under the hammer, another spent shell to the right of the hammer, and a loaded shell in the next chamber to the right.
Although the appellees attempted to elicit testimony from several witnesses of Wayne's habit of playing with guns while he had been drinking, the trial court repeatedly sustained Farm Bureau's objections to the admissibility of such evidence.
At the close of all the testimony, Farm Bureau moved for a directed verdict. The appellees then made an offer of proof, documenting for the record the proffered testimony of Wayne's habit of partially loading his gun and playing jokes upon his friends while he had been drinking. The trial court, however, never admitted this testimony into evidence. The motion for a directed verdict was denied.
The court held that because Wayne's shooting of his brother was neither expected nor intended from the standpoint of the insured, Wayne Dyer, Farm Bureau was obligated to defend and provide coverage to Wayne's estate in the wrongful death action. Farm Bureau's post-trial motions for a new trial and/or to alter, amend, or vacate the judgment were denied.
The issues presented for review are 1) whether the ore tenus presumption of correctness applies to the trial court's ruling that the injury which Wayne Dyer inflicted upon his brother William was not "expected or intended from the standpoint of the insured," Wayne; 2) whether a subjective or objective standard governs the determination of whether the insured's infliction of bodily injury upon another was expected or intended; and 3) whether the trial court erred in determining that the insured Wayne Dyer neither expected nor intended to injure his brother.
Various presumptions of correctness attend the trial court's findings of fact. Under the ore tenus rule, when the trial court hears disputed evidence without a jury, its findings of fact will not be disturbed unless clearly erroneous, palpably wrong, or manifestly unjust. Leslie v. Pine Crest Homes, Inc.,388 So.2d 178 (Ala. 1980). Conversely, where the trial court's ruling rests upon a construction of facts indisputably established, this Court *Page 924 
indulges no presumption of correctness in favor of the lower court's ruling. See Alabama Farm Bureau Mut. Casualty Ins. Co.v. Cain, 387 So.2d 195 (Ala. 1980); Waters v. Merritt, 277 Ala. 346, 170 So.2d 492 (1964).
Farm Bureau argues that the ore tenus presumption of correctness does not apply to the trial court's ruling that Wayne's shooting of his brother William was neither "expected nor intended from the standpoint of the insured" because the ruling involved the construction of the terms of an insurance policy, which is traditionally a mixed question of law and fact, and because all facts surrounding the shooting were uncontroverted.
Although the trial court's ruling admittedly involved the construction of a standard-form insurance policy exclusion, this Court has consistently held that the question of whether an injury which the insured inflicts upon another person is "expected or intended from the standpoint of the insured" is a question of fact for the jury or judge. Boyd v. Great CentralIns. Co., 401 So.2d 19 (Ala. 1981); Smith v. North River Ins.Co., 360 So.2d 313 (Ala. 1978); Hartford Fire Ins. Co. v.Blakeney, 340 So.2d 754 (Ala. 1976).
Even though the evidence established that Wayne deliberately pulled a gun from his pocket, pointed the gun at his brother, and pulled the trigger, additional evidence admitted at trial of the brothers' amicable relationship, Long's indifference to Wayne's act of aiming his gun at his brother, and Wayne's suicide immediately following his brother's death tends to negate the inference that Wayne intended or expected to injure his brother. Thus, the ore tenus presumption of correctness attends the trial court's ruling on this controverted, factual question.
Farm Bureau argues that even under the ore tenus presumption, the trial court's ruling on the applicability of this exclusion is clearly erroneous, palpably wrong, and manifestly unjust under the objective standard of review which declares that a "`voluntary injury is intentionally doing some act which reasonable and ordinary prudence would pronounce dangerous.'"Hartford Fire Ins. Co. v. Blakeney, 340 So.2d 754, 756 (Ala. 1976). Under this standard, Farm Bureau contends that because reasonable, ordinary prudence would certainly pronounce the act of pulling the trigger of a gun aimed within point-blank range at another person "dangerous," the resulting injury to this person would therefore be "expected or intended from the standpoint of the insured."
The appellees argue in response that this Court in Blakeney,supra, in actuality employed a primarily subjective standard mandated by the policy language, "from the standpoint of the insured," and that our more recent pronouncements interpreting this policy exclusion in Smith v. North River Ins. Co.,360 So.2d 313 (Ala. 1978), and Boyd v. Great Central Ins. Co.,401 So.2d 19 (Ala. 1981), have repudiated the objective standard mentioned in Blakeney in favor of a purely subjective standard. Under this subjective standard, the appellees contend that the only relevant inquiry is whether the insured Wayne Dyer specifically intended to injure his brother William when he pulled the trigger of his gun, and that evidence of the brothers' long-standing amicable relationship combined with Wayne's concomitant shock and suicide following William's death supports the trial court's ruling that Wayne subjectively neither intended nor expected to injure his brother.
Because the preceding arguments posit the horns of a dilemma which this subjective/objective dichotomy creates, we must re-examine the Blakeney decision and its progeny to determine whether a subjective or objective standard governs the interpretation of this policy exclusion.
In Blakeney, this Court upheld a jury verdict in favor of an insured based upon its findings that although the insured Blakeney intentionally pushed another from a doorway, Blakeney never expected or intended that as a result of this act, the other person would suffer serious and extensive brain damage. Although this holding *Page 925 
is ostensibly predicated upon a subjective standard, what the insured Blakeney subjectively expected or intended, we nevertheless upheld the following statement contained in the trial court's oral charge which tends to cast an objective gloss upon the application of the rule:
 "`[A] voluntary injury is intentionally doing some act which reasonable and ordinary prudence would pronounce dangerous. * * *'"
Hartford Fire Ins. Co. v. Blakeney, 340 So.2d 754, 756 (Ala. 1976).
Although our next decision interpreting this exclusion, Smithv. North River Ins. Co., 360 So.2d 313 (Ala. 1978), employs a strictly subjective standard to ascertain whether another's injury was either "expected or intended from the standpoint of the insured," this objective standard of "reasonable and ordinary prudence" reappears in a concurrence to our most recent decision interpreting this exclusion, Boyd v. GreatCentral Ins. Co., 401 So.2d 19, 21 (Ala. 1981).
Yet an investigation of the origin of this "reasonable and ordinary prudence" language reveals that this objective standard in actuality has no relevance to the proper interpretation of the "expected or intended from the standpoint of the insured" exclusion.
In Equitable Accident Ins. Co. v. Osborn, 90 Ala. 201,9 So. 869 (1890), this Court for the first time used the objective language later quoted in Blakeney:
 "The phrase — `voluntary exposure to unnecessary danger' — involves the idea of `intentionally doing some act which reasonable and ordinary prudence would pronounce dangerous.'"
90 Ala. at 206, 9 So. at 870 (citations omitted).
The "voluntary exposure to unnecessary danger" exclusion, however, denies coverage for the insured's bodily injury or property damage resulting from the insured's intentional exposure to a condition which the reasonable person would pronounce dangerous,[1] hence the need for an objective methodology, unlike the "expected or intended from the standpoint of the insured" exclusion, which denies coverage for another person's bodily injury or property damage which the insured either subjectively expected or intended to inflict upon another.
Because the presumption in tort and criminal law that a person intends the natural and probable consequences of his or her intentional acts has no application to the interpretation of the terms used in the "expected or intended from the standpoint of the insured" policy exclusion, the policy term, "expected or intended injury," cannot be equated with "foreseeable injury." See Smith v. North River Ins. Co.,360 So.2d 313, 315 (Ala. 1978) (question of intent in personal injury action not the same as question of "expected or intended" injury in policy exclusion).
We therefore hold that a purely subjective standard governs the determination of whether the insured Wayne Dyer either expected or intended to inflict bodily injury upon his brother, William. Under this subjective test, an injury is "intended from the standpoint of the insured" if the insured possessed the specific intent to cause bodily injury to another, whereas an injury is "expected from the standpoint of the insured" if the insured subjectively possessed a high degree of certainty that bodily injury to another would result from his or her act.See Continental Western Ins. Co. v. Toal, 244 N.W.2d 121, 125
(Minn. 1976), for a thorough discussion of the proper standard used to interpret this policy exclusion. *Page 926 
The final issue presented for review is whether the trial court erred in determining that the insured Wayne Dyer neither expected nor intended to injure his brother.
Farm Bureau's position is predicated upon an objective interpretation of the policy terms "expected or intended from the standpoint of the insured." Because a purely subjective standard governs the construction of this clause, the record discloses ample evidence to support the trial court's ruling.
In particular, Tommy Long, the sole eyewitness, testified at trial that the Dyer brothers enjoyed a longstanding amicable relationship which was in no way jeopardized by the trivial argument which precipitated the shootings. In fact, Long was so unconcerned about the argument that he went into the house and started eating supper. Long was not even surprised when Wayne pulled out a gun and pointed it at William:
 "Well, it happened so fast. It surprised me that [the gun] went off, is what surprised me. Not particularly pulling the gun. It surprised me that it went off."
According to Long, after the gun discharged and shot William, Wayne was shocked and stunned and asked Long to call an ambulance for his brother. Soon thereafter, Wayne killed himself. An investigation following the shootings revealed that the gun was only partially loaded during this period.
Based upon all this evidence, the court could reasonably have concluded that Wayne neither expected nor intended that the gun would discharge and wound his brother.[2]
We therefore affirm the judgment.
AFFIRMED.
TORBERT, C.J., and FAULKNER, EMBRY and ADAMS, JJ., concur.
[1] See Aetna Life Ins. Co. v. Beasley, 272 Ala. 153,130 So.2d 178 (1961); United Ins. Co. of America v. Ray, 271 Ala. 543,125 So.2d 704 (1960). Subsequent cases used the "voluntary exposure to unnecessary danger" standard of "reasonable and ordinary prudence" to rebut the presumption of "accidental" injury where the insured's injuries were nevertheless caused by both "external and violent means." See Emergency Aid Ins. Co.v. Dobbs, 263 Ala. 594, 83 So.2d 335 (1955); Inter-OceanCasualty Co. v. Foster, 226 Ala. 348, 147 So. 127 (1933).
[2] In a similar case, United States Fidelity Guar. Co. v.Perez, 384 So.2d 904 (Fla.Ct.App.), petition denied,392 So.2d 1381 (Fla. 1980), the Florida Court of Appeals found insurance coverage where the record disclosed that the insured, Maria Otera, did not intend to harm Johnny Perez but only to frighten him when she fired her gun and accidentally, recklessly, and, through culpable negligence, killed him.