661 So.2d 232 (1995)
Earthia JACKSON, individually and as administratrix of the Estate of Lorenzo Alonzo Goldsmith, deceased
v.
STATE FARM FIRE AND CASUALTY COMPANY.
1940130.
Supreme Court of Alabama.
May 5, 1995.
Willie J. Huntley, Jr. of Crosby, Saad, Beebe & Crump, P.C., Mobile, for appellant.
Carl Robert Gottlieb, Jr. and William W. Watts III of Reams, Philips, Brooks, Schell, Gaston & Hudson, P.C., Mobile, for appellee.
COOK, Justice.
Earthia Jackson appeals from a summary judgment entered in favor of State Farm Fire and Casualty Company in a declaratory judgment action filed by State Farm in order to determine its duty to defend and indemnify its policyholders James F. Lambert, Sr., and James F. Lambert, Jr., in an action filed against them by Earthia Jackson, individually and as administratrix of the estate of Lorenzo Alonzo Goldsmith. Goldsmith was shot and killed by James Lambert, Jr. The Lamberts' car had been stolen, apparently by Goldsmith, and when it was reported seen in the area of their home, the Lamberts got into another vehicle and went looking for it. Both Lamberts were armed, but each *233 claimed that he was inexperienced with guns. Their car was spotted and ultimately the Lamberts and a companion followed it into a parking lot. The Lamberts claim that their sole intention in carrying the weapons was to force the individuals from the car and hold them there while their companion notified the police. Lambert, Jr., exited the car after yelling "Dad, he's got a gun," and, as he exited, he fired at Goldsmith. He claims that he has no recollection of the incident, but he claims that if he did fire a shot, he did not intend to hurt anyone. In addition, the deposition testimony of Lambert, Sr., indicated that when the shot was fired, the gun was pointed in the direction of the car, Lambert Jr.'s head was turned, and Lambert, Jr., seemed to be "in a trance." R.T. at 172. Both Lamberts were acquitted of charges of assault in the first degree, and James, Jr., was acquitted of murder.
State Farm Fire and Casualty refused to defend or to indemnify the Lamberts in an action filed by the administratrix of Goldsmith's estate for the wrongful death of her son. State Farm based its decision on this policy provision in the insurance contract:
"1. Coverage L and Coverage M do not apply to:
"a. bodily injury or property damage:
"(1) which is either expected or intended by an insured."

(Emphasis added.) State Farm argues that the shot fired by Lambert, Jr., was fired in self defense and, therefore, was not an "accident" as defined in the policy. In Alabama Farm Bureau Mutual Casualty Ins. Co. v. Dyer, 454 So.2d 921 (Ala.1984), we stated:
"Under this subjective test, an injury is `intended from the standpoint of the insured' if the insured possessed the specific intent to cause bodily injury to another, whereas an injury is `expected from the standpoint of the insured' if the insured subjectively possessed a high degree of certainty that bodily injury to another would result from his or her act. See Continental Western Ins. Co. v. Tool, 309 Minn. 169, 244 N.W.2d 121, 125 (1976), for a thorough discussion of the proper standard used to interpret this policy exclusion."
454 So.2d at 925. In White v. Maryland Casualty Co., 589 So.2d 1294 (Ala.1991), this Court, analyzing Dyer, stated:
"This Court, in Alabama Farm Bureau Mut. Cas. Ins. Co. v. Dyer, 454 So.2d 921 (Ala.1984), held that the presumption in tort and criminal law that a person intends the natural and probable consequences of his intentional acts has no application to the term `expected or intended from the standpoint of the insured' used in the policy; the term `expected or intended injury' cannot be equated with `foreseeable injury'; and a purely subjective standard governs the determination of whether the insured expected or intended the injury. Id. at 925. Therefore, [the defendant's] conviction for manslaughter, which requires a finding of objective intent, see Ala.Code 1975, §§ 13A-6-3; 13A-2-2(3), cannot be used as evidence that [the defendant] subjectively intended to injure [the decedent]."
589 So.2d at 1295. If a conviction, standing alone, does not conclusively establish the elements of subjective intent to injure another, how can someone's acquittal be considered conclusive on the question of that person's intent? The facts of this case create a genuine issue of disputed fact as to whether Lambert, Jr., subjectively intended to shoot Goldsmith.
This is an appeal from a summary judgment. State Farm relies heavily on Allstate Ins. Co. v. Portis, 472 So.2d 997 (Ala.1985); that case was not an appeal from a summary judgment, but an appeal from a judgment based on a jury verdict in favor of the insurance company. Because the standard is a subjective one, the summary judgment is reversed and and the cause is remanded. Alabama Farm Bureau Mutual Casualty Ins. Co. v. Dyer, 454 So.2d 921 (Ala.1984).
REVERSED AND REMANDED.
SHORES, KENNEDY, INGRAM, and BUTTS, JJ., concur.
HOUSTON, J., dissents.
*234 HOUSTON, Justice (dissenting).
The trial court granted State Farm Fire & Casualty Company's motion for a summary judgment in this declaratory judgment action filed by State Farm for a judgment declaring that it owed no duty to defend or to indemnify James F. Lambert, Sr., and James F. Lambert, Jr., in a wrongful death action brought against the Lamberts by Earthia Jackson, individually and as administratrix of the estate of Lorenzo Alonzo Goldsmith, deceased.
Goldsmith was shot and killed by Lambert, Jr., who says he has no memory of the event from the time he and his father were searching for a car that had been stolen from his father until he was sitting in the docket room at the police station. According to the deposition of Lambert, Sr., the Lamberts spotted the stolen car, followed the car until it pulled into the parking lot of a restaurant, and watched as two people exited the car and entered the restaurant. Lambert, Sr., had an "antique" shotgun and a .38 caliber pistol as he approached the stolen car. The shotgun came apart in his hands and it accidentally fired and shot a hole in the rear window of the stolen car. This shot did not kill or injure Goldsmith. Two other occupants got out of the car and began to flee, and Lambert, Sr., shot his pistol into the air and called for one of the fleeing men to stop. This shot did not kill or injure Goldsmith.
Being unsuccessful in his attempt to stop the fleeing man, Lambert, Sr., returned to the stolen car; there he saw his son Lambert, Jr., standing to the rear of the car with a semi-automatic pistol in his right hand. Lambert, Jr., was looking inside the car through the back window on the driver's side. All four doors were closed at this time. Lambert, Sr., saw the driver's door begin to open and then close. As Lambert, Sr., approached the car, his son cried, "Daddy, he's got a gun." The driver's door opened again. Lambert, Sr., then saw the remaining occupant start to get out.
Before the occupant's feet hit the pavement and before his head emerged from the car, Lambert, Jr., aimed and fired the pistol directly at him.
Lambert, Jr., was standing five to eight feet from the driver's door when he aimed and fired his pistol at the occupant. Lambert, Sr., says he does not know exactly how many shots were fired, but that it might have been two or three shots. When he fired the pistol, Lambert, Jr., was looking at the driver's door to see if the occupant had a gun. Lambert, Sr., said he does not think Lambert, Jr., had his eyes closed. Lambert, Jr., had the gun pointed at the driver's door, at the occupant getting out of the car, when he pulled the trigger and shot him.
Immediately after Lambert, Jr., began shooting, Lambert, Sr., grabbed him around the waist from the back, to stop him. He asked his son why he had fired. Lambert, Sr., described his son's response as follows:
"Q. Okay. Now you said in the trial, they quoted you in the newspaper as saying when you asked Jamie why he fired, he said, `Daddy, he got a gun. You and I could have gotten shot.' Do you remember that?
"A. Yes, sir.
"Q. So Jamie told you right there at the scene that he shot the pistol because he was afraid you and he might get shot?
"A. He told me the boy had athat they had guns.
"Q. Right. And he told you he fired because he was afraid that you and he might get shot if he didn't?

"A. Yes, sir.

"....
"Q. Now, Jamie told you that he meant to shoot; right?
"A. No, sir, he didn't tell me he meant to shoot.
"Q. Well, he said he shot because he thought you all were about to get shot, didn't he.
"A. Yes, sir. But he didn't tell me he meant to shoot, but he shot because he thought the guy had the gun.
"Q. Right.
"A. I mean, he said he saw a gun.
"Q. Right. And Jamie told you that he shot because he saw or thought the other guy had a gun?

*235 "A. Yes, sir.

"Q. That he saw a gun?

"A. Yes, sir.

"Q. And you understood that he was shooting in self-defense?

"A. Yes.

"Q. Or that's what he thought?

"A. Yes, sir."

(Emphasis added.)
In Allstate Insurance Co. v. Portis, 472 So.2d 997, 999-1000 (Ala.1985), this Court sustained a jury verdict for Portis in a declaratory action involving coverage for the wrongful death action brought against Portis by the estate of a neighbor whom Portis had shot and killed during a dispute. At trial, Portis claimed that his gun went off accidentally. Other witnesses testified that Portis had stated shortly after the shooting that he had fired intentionally, but in self-defense. The conflict in the evidence made Portis's intent to injure an issue for the jury.
In Alabama, a fatal shooting of an insured by another, that the undisputed evidence shows to have been in self-defense, is not covered by an accident insurance policy that excludes coverage for injuries "intentionally inflicted ... by another person." Vulcan Life Ins. Co. v. McDuffie, 57 Ala.App. 634, 331 So.2d 280 (1976), cert. denied, 331 So.2d 284 (Ala.1976).
In viewing an intentional shooting of another in self-defense as necessarily establishing an intent to injure, this Court had, until the summary reversal and remand of this case, aligned itself with the majority of jurisdictions, which holds that acts of self-defense are undeniably intentional and fall within the scope of "intentional injury" exclusions. See Annot., "Acts in Self Defense as Within Provision of Liability Insurance Policy Expressly Excluding Coverage or Damage or Injury Intended or Expected by Insured," 34 A.L.R.4th 761 (1984). In the following cases, the courts have held that coverage was not available, as a matter of law, where the evidence was without dispute that the insured fired directly at his victim in self-defense. State Farm & Casualty Co. v. Sanders, 805 F.Supp. 1453 (S.D.Ind.1992) (applying Indiana law); Allstate Insurance Co. v. Simms, 597 F.Supp. 64 (D.Or.1984) (applying Oregon law); State Farm Fire & Casualty Co. v. Marshall, 554 So.2d 504 (Fla. 1989); Clemmons v. American States Ins. Co., 412 So.2d 906 (Fla.App.1982), review denied, 419 So.2d 1196 (Fla.1982); Stein v. Massachusetts Bay Ins. Co., 172 Ga.App. 811, 324 S.E.2d 510 (1984); Home Insurance Co. v. Neilsen, 165 Ind.App. 445, 332 N.E.2d 240 (1975); McAndrews v. Farm Bureau Mut. Ins. Co., 349 N.W.2d 117 (Iowa 1984); Grange Ins. Co. v. Brosseau, 113 Wash.2d 91, 776 P.2d 123 (1989).
I would affirm the judgment of the trial court; therefore, I dissent.