The trial court granted State Farm Fire Casualty Company's motion for a summary judgment in this declaratory judgment action filed by State Farm for a judgment declaring that it owed no duty to defend or to indemnify James F. Lambert, Sr., and James F. Lambert, Jr., in a wrongful death action brought against the Lamberts by Earthia Jackson, individually and as administratrix of the estate of Lorenzo Alonzo Goldsmith, deceased.
Goldsmith was shot and killed by Lambert, Jr., who says he has no memory of the event from the time he and his father were searching for a car that had been stolen from his father until he was sitting in the docket room at the police station. According to the deposition of Lambert, Sr., the Lamberts spotted the stolen car, followed the car until it pulled into the parking lot of a restaurant, and watched as two people exited the car and entered the restaurant. Lambert, Sr., had an "antique" shotgun and a .38 caliber pistol as he approached the stolen car. The shotgun came apart in his hands and it accidentally fired and shot a hole in the rear window of the stolen car. This shot did not kill or injure Goldsmith. Two other occupants got out of the car and began to flee, and Lambert, Sr., shot his pistol into the air and called for one of the fleeing men to stop. This shot did not kill or injure Goldsmith.
Being unsuccessful in his attempt to stop the fleeing man, Lambert, Sr., returned to the stolen car; there he saw his son Lambert, Jr., standing to the rear of the car with a semi-automatic pistol in his right hand. Lambert, Jr., was looking inside the car through the back window on the driver's side. All four doors were closed at this time. Lambert, Sr., saw the driver's door begin to open and then close. As Lambert, Sr., approached the car, his son cried, "Daddy, he's got a gun." The driver's door opened again. Lambert, Sr., then saw the remaining occupant start to get out.
Before the occupant's feet hit the pavement and before his head emerged from the car, Lambert, Jr., aimed and fired the pistol directly at him.
Lambert, Jr., was standing five to eight feet from the driver's door when he aimed and fired his pistol at the occupant. Lambert, Sr., says he does not know exactly how many shots were fired, but that it might have been two or three shots. When he fired the pistol, Lambert, Jr., was looking at the driver's door to see if the occupant had a gun. Lambert, Sr., said he does not think Lambert, Jr., had his eyes closed. Lambert, Jr., had the gun pointed at the driver's door, at the occupant getting out of the car, when he pulled the trigger and shot him.
Immediately after Lambert, Jr., began shooting, Lambert, Sr., grabbed him around the waist from the back, to stop him. He asked his son why he had fired. Lambert, Sr., described his son's response as follows:
 "Q. Okay. Now you said in the trial, they quoted you in the newspaper as saying when you asked Jamie why he fired, he said, 'Daddy, he got a gun. You and I could have gotten shot.' Do you remember that?
"A. Yes, sir.
 "Q. So Jamie told you right there at the scene that he shot the pistol because he was afraid you and he might get shot?
 "A. He told me the boy had a — that they had guns.
 "Q. Right. And he told you he fired because he was afraid that you and he might get shot if he didn't?
"A. Yes, sir.
". . . .
 "Q. Now, Jamie told you that he meant to shoot; right?
 "A. No, sir, he didn't tell me he meant to shoot.
 "Q. Well, he said he shot because he thought you all were about to get shot, didn't he.
 "A. Yes, sir. But he didn't tell me he meant to shoot, but he shot because he thought the guy had the gun.
"Q. Right.
"A. I mean, he said he saw a gun.
 "Q. Right. And Jamie told you that he shot because he saw or thought the other guy had a gun? *Page 235 
"A. Yes, sir.
"Q. That he saw a gun?
"A. Yes, sir.
 "Q. And you understood that he was shooting in self-defense?
"A. Yes.
"Q. Or that's what he thought?
"A. Yes, sir."
(Emphasis added.)
In Allstate Insurance Co. v. Portis, 472 So.2d 997, 999-1000
(Ala. 1985), this Court sustained a jury verdict for Portis in a declaratory action involving coverage for the wrongful death action brought against Portis by the estate of a neighbor whom Portis had shot and killed during a dispute. At trial, Portis claimed that his gun went off accidentally. Other witnesses testified that Portis had stated shortly after the shooting that he had fired intentionally, but in self-defense. The conflict in the evidence made Portis's intent to injure an issue for the jury.
In Alabama, a fatal shooting of an insured by another, that the undisputed evidence shows to have been in self-defense, is not covered by an accident insurance policy that excludes coverage for injuries "intentionally inflicted . . . by another person." Vulcan Life Ins. Co. v. McDuffie, 57 Ala. App. 634,331 So.2d 280 (1976), cert. denied, 331 So.2d 284 (Ala. 1976).
In viewing an intentional shooting of another in self-defense as necessarily establishing an intent to injure, this Court had, until the summary reversal and remand of this case, aligned itself with the majority of jurisdictions, which holds that acts of self-defense are undeniably intentional and fall within the scope of "intentional injury" exclusions. See Annot., "Acts in Self Defense as Within Provision of Liability Insurance Policy Expressly Excluding Coverage or Damage or Injury Intended or Expected by Insured," 34 A.L.R.4th 761 (1984). In the following cases, the courts have held thatcoverage was not available, as a matter of law, where theevidence was without dispute that the insured fired directly athis victim in self-defense. State Farm Casualty Co. v.Sanders, 805 F. Supp. 1453 (S.D.Ind. 1992) (applying Indiana law); Allstate Insurance Co. v. Simms, 597 F. Supp. 64 (D.Or. 1984) (applying Oregon law); State Farm Fire Casualty Co. v.Marshall, 554 So.2d 504 (Fla. 1989); Clemmons v. AmericanStates Ins. Co., 412 So.2d 906 (Fla.App. 1982), review denied,419 So.2d 1196 (Fla. 1982); Stein v. Massachusetts Bay Ins.Co., 172 Ga. App. 811, 324 S.E.2d 510 (1984); Home InsuranceCo. v. Neilsen, 165 Ind. App. 445, 332 N.E.2d 240 (1975);McAndrews v. Farm Bureau Mut. Ins. Co., 349 N.W.2d 117 (Iowa 1984); Grange Ins. Co. v. Brosseau, 113 Wn.2d 91,776 P.2d 123 (1989).
I would affirm the judgment of the trial court; therefore, I dissent.