State Farm Fire Casualty Company appeals from summary judgments entered against it by the Mobile Circuit Court in a declaratory-judgment action filed by State Farm. State Farm sought a judgment declaring that it was not obligated to defend or indemnify its insured, Vernon M. Chestang, Jr., for claims that Joanann Eckhoff, as administratrix of the estate of Donald Eckhoff, Sr., brought in a wrongful-death action against Chestang. We reverse and remand.
 Facts and Procedural History
On August 7, 1999, Vernon M. Chestang, Jr., shot and killed his next-door neighbor, Donald Eckhoff, Sr.[1] At the time of the *Page 1103 
shooting, Chestang was insured under a homeowner's policy issued by State Farm.
In February 2001, Joanann Eckhoff, as representative of Donald's estate, wrote a letter informing Chestang that she would be pursuing a civil action against him as a result of Donald's death. After receiving Joanann's letter, Chestang notified State Farm of the claim and requested that State Farm defend and indemnify him in the coming litigation.
On July 31, 2001, Joanann filed a wrongful-death action alleging that Chestang had negligently and recklessly caused Donald's death. On August 14, 2001, State Farm filed an action against Joanann and Chestang seeking a judgment declaring that it was not obligated under the homeowner's policy it had issued to Chestang to defend or indemnify Chestang in Joanann's wrongful-death action. Among other things, State Farm argued that two exclusions in the homeowner's policy precluded coverage for the shooting — one excluded coverage for "bodily injury or property damage . . . which is either expected or intended by the insured"; the other excluded "bodily injury or property damage . . . which is the result of willful and malicious acts of the insured."
In June 2004, Joanann and Chestang filed summary-judgment motions and supporting materials.[2] State Farm filed materials in opposition to both summary-judgment motions. The trial court heard oral argument from the parties in October 2004. On October 26, 2004, the trial court granted Joanann's summary-judgment motion; on November 10, 2004, the trial court granted Chestang's summary-judgment motion. Neither of the trial court's orders, however, state a specific reason for granting the summary-judgment motions. State Farm filed a notice of appeal from each summary judgment.[3] *Page 1104 
 Standard of Review "`This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce "substantial evidence" as to the existence of a genuine issue of material fact. Bass v. South-Trust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12. "[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved. "West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala. 1989).'"
Prince v. Poole, 935 So.2d 431, 442 (Ala. 2006) (quoting Dow v. Alabama Democratic Party, 897 So.2d 1035,1038-39 (Ala. 2004)).
 Discussion
Under the caption "SECTION II — EXCLUSIONS," the homeowner's policy includes the following language:
 "1. Coverage L [personal liability] and Coverage M [medical payments to others] do not apply to:
 "a. bodily injury or property damage:
 "(1) which is either expected or in-tended by the insured; or
 "(2) which is the result of willful and malicious acts of the insured."
(Emphasis added.) That policy language sets forth two separate exclusions: the "expected or intended" exclusion (Part 1.a.(1)) and the "willful and malicious acts" exclusion (Part 1.a.(2)). In its declaratory-judgment complaint and in its materials filed in opposition to summary judgment, State Farm argued the applicability of both exclusions. However, because a genuine issue of material fact exists as to the "expected or intended" exclusion — the sole basis for summary judgment specifically asserted by Joanann and Chestang — we address only the "expected or intended" exclusion and pretermit consideration for the first time on appeal of the effect of the policy exclusion for willful and malicious acts.[4]
As Chestang and Joanann argued to the trial court and to this Court, a subjective standard determines whether the "expected or intended" exclusion applies — that is, whether an insured "expected or intended" to inflict "bodily injury or property damage. "Alabama Farm Bureau *Page 1105 Mut. Cos. Ins. Co. v. Dyer, 454 So.2d 921, 925
(Ala. 1984).
 "Under this subjective test, an injury is `intended from the standpoint of the insured' if the insured possessed the specific intent to cause bodily injury to another, whereas an injury is `expected from the standpoint of the insured' if the insured subjectively possessed a high degree of certainty that bodily injury to another would result from his or her act."
454 So.2d at 925; see also Jackson v. State Farm Fire Cas. Co., 661 So.2d 232, 233 (Ala. 1995) (applying Dyer's subjective test to exclusion in policy stating that coverage under the policy did not apply to bodily injury "which is either expected or intended by an insured").
State Farm concedes that the Dyer subjective standard governs the "expected or intended" exclusion. However, State Farm argues that even under Dyer's subjective standard, there is a genuine issue of material fact as to whether the "expected or intended" exclusion applies to the shooting of Donald. We agree.
The language of the "expected or intended" exclusion focuses on the subjective state of mind of the insured — it states that the policy provides no coverage for "bodily injury or property damage . . . which is either expected or intended by theinsured" (emphasis added).[5] Chestang and Joanann argue that Chestang's conviction for reckless manslaughter, a violation of § 13A-6-3(a)(1), Ala. Code 1975, cannot be used as evidence indicating that Chestang subjectively "expected or intended" to injure Donald. Jackson, 661 So.2d at 233 ('"This Court, in [Dyer] held that the presumption in tort and criminal law that a person intends the natural and probable consequences of his intentional acts has no application to the term "expected or intended from the standpoint of the insured" used in the policy; the term "expected or intended injury" cannot be equated with "foreseeable injury"; and a purely subjective standard governs the determination of whether the insured expected or intended the injury. . . . Therefore, [the defendant's] conviction for manslaughter, which requires a finding of objective intent, see Ala. Code 1975, §§ 13A-6-3;13A-2-2(3), cannot be used as evidence that [the defendant] subjectively intended to injure [the decedent].'" (quoting White v. Maryland Cas. Co., 589 So.2d 1294, 1295
(Ala. 1991))). State Farm, however, does not rely on Chestang's manslaughter conviction as proof of his subjective intent. Instead, State Farm has offered other evidence from which the fact-finder could conclude that Chestang "expected or intended" to injure Donald.
At his deposition, Chestang testified that he and Donald, who was Chestang's next-door neighbor, had a rather turbulent relationship. The two men on a number of occasions had exchanged insulting or threatening words. On the evening of the shooting, Chestang and his girlfriend got into his truck to go to a nearby convenience store. Chestang's girlfriend was *Page 1106 
driving the truck, and while they were backing out of Chestang's driveway, Donald, who was standing in the street, allegedly cursed at them and challenged Chestang to a fight.[6] At the convenience store, Chestang took a loaded .22 caliber revolver out of a toolbox in his truck, and he placed the revolver on the seat of the truck.
Chestang said that upon returning to his driveway, he saw Donald start to run toward him. Chestang placed the revolver in his right hand and got out of the truck. As Donald approached, Chestang raised the revolver in his right hand and "pointed" it at Donald. Chestang had his index finger on the trigger and had already cocked the pistol before he "pointed" it at Donald. Chestang stated that because of a mechanical problem with the revolver, a single pull of the trigger would not both cock and release the hammer. Thus, to fire a round, Chestang had to separately cock the hammer and then pull the trigger.[7]
Chestang stated that he "pointed" the revolver at Donald with the intention of preventing Donald from harming him. Chestang testified that when he "pointed" the loaded revolver at Donald, he understood that if he pulled the trigger, the handgun would fire a round. However, Chestang maintained that he did not intend for the revolver to fire when it did — that is, he testified that the handgun discharged "prematurely" or "accidentally."
In that regard, Chestang testified at his deposition:
 "Q. All right. Tell me, why do you say the gun discharged prematurely?
 "A. I didn't intend — like I said, at the time that the gun discharged, it wasn't as if I'm going to shoot you right now. I mean, I had the gun pointed, true enough, and I possibly did squeeze the trigger. I can't say that. This is at the heat of everything. But I didn't intentionally intend for it to discharge when it did."
(Emphasis added.)
Chestang admitted that although he had owned the gun for more than 30 years and had fired it several times, he could not remember a specific instance when the revolver had discharged prematurely or accidentally. Chestang also testified that at the time the revolver prematurely or accidentally discharged, Donald was reaching into his pocket for what Chestang thought was a weapon. Later, it was established that Donald had only pretzels in his pocket.
Chestang's own testimony creates a genuine issue of fact as to whether he "expected or intended" to injure Donald. Consequently, the trial court erred in entering summary judgments in favor of Chestang and Joanann.
 Conclusion
The trial court's summary judgments in favor of Chestang and Joanann are re *Page 1107 
versed, and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and LYONS, WOODALL, and PARKER, JJ., concur.
[1] Chestang was indicted for intentional murder under §13A-6-2(a)(1), Ala. Code 1975. On August 23, 2000, a jury found Chestang guilty of reckless manslaughter. See § 13A 6-3(a)(1), Ala. Code 1975. However, the Court of Criminal Appeals reversed that conviction. Chestang v. State,837 So.2d 867, 868-69 (Ala.Crim.App. 2001). Following a second trial in October 2002, Chestang was again convicted of reckless manslaughter. In an unpublished memorandum, the Court of Criminal Appeals affirmed Chestang's second conviction. Chestangv. State (No. CR-02-0625, August 22, 2003), 886 So.2d 181
(Ala.Crim.App. 2003) (table), cert. denied, Ex parteChestang, 891 So.2d 1013 (Ala. 2003).
[2] Both Joanann's and Chestang's motions for summary judgment argue that there are no issues of material fact regarding whether the shooting was a covered "occurrence" under the policy; however, the materials Chestang and Joanann filed in support of their summary-judgment motions did not specifically address anything other than the "expected or intended" exclusion. Even so, the record indicates that the trial court's summary-judgment orders disposed of all of State Farm's claims. In opposition to Joanann's and Chestang's motions, State Farm presented to the trial court the same three arguments it argues on appeal to this Court, i.e., (1) that the "expected or intended" exclusion applies; (2) that the "willful and malicious acts" exclusion applies; and (3) that Chestang did not comply with the policy's requirement that he notify State Farm in writing of the incident "as soon as practicable." After considering all of the parties' materials and arguments, the trial court granted Joanann's and Chestang's summary-judgment motions.
[3] State Farm filed postjudgment motions, including a motion to "reconsider" and a motion seeking clarification of the trial court's summary-judgment orders. The trial court did not rule on State Farm's postjudgment motions, so the motions were denied by operation of law. Rule 59.1, Ala. R. Civ. P. State Farm, however, filed its notices of appeal before those motions were denied by operation of law. Rule 4(a)(5), Ala. R.App. P., states:
 "A notice of appeal filed after the entry of the judgment but before the disposition of all post-judgment motions filed pursuant to Rules 50, 52, 55, and 59, Alabama Rules of Civil Procedure, shall be held in abeyance until all post-judgment motions filed pursuant to Rules 50, 52, 55, and 59 are ruled upon; such a notice of appeal shall become effective upon the date of disposition of the last of all such motions."
[4] State Farm also argued that Chestang failed to comply with the requirement in the policy that the insured provide State Farm with written notice of an accident or occurrence "as soon as practicable." Our reversal of the summary judgments pretermits any discussion of the notice issue.
[5] In Dyer, inclusion of the phrase "from the standpoint of the insured" in the "expected or intended" exclusion made it even clearer that a subjective standard determines whether the exclusion is applicable. Dyer,454 So.2d at 925. Jackson, as we have noted, extendedDyer's subjective standard to language that is virtually identical to the language of the "expected or intended" exclusion in this case. Jackson, 661 So.2d at 233. The "expected or intended" exclusion in Jackson applied to "bodily injury . . . which is either expected or intended by an
insured" (emphasis added), whereas the "expected or intended" exclusion in this case refers to "the insured" (emphasis added).
[6] Chestang's testimony to this effect was disputed. Joanann testified that Donald had undergone heart surgery only a few days before the shooting and was still recovering from that surgery when he was killed.
[7] In addition to Chestang's testimony that the .22 caliber revolver would not fire without the hammer first being cocked, State Farm offered deposition testimony from a forensic scientist who examined the revolver that Chestang had used to shoot Donald. The forensic scientist described Chestang's handgun as a "double action" revolver, i.e., a revolver designed so that a single pull of the trigger would both cock and release the hammer, firing a round. The forensic scientist testified that in his test of the revolver, its "double action" feature did not work correctly.