939 P.2d 1337

**OHIO CASUALTY INSURANCE COM-
PANY, a foreign corporation,
Plaintiff/Appellee.**

v.

**Joel HENDERSON, a single individual,
and Eric Hill and Sylvia Hill, husband
and wife, as surviving parents of Padriac
Hill, Defendants/Appellants.**

**No. CV–96–0396–PR.**

Supreme Court of Arizona,
En Banc.

May 29, 1997.

Ridenour, Swenson, Cleere & Evans, P.C.
by Robert R. Beltz, Scott A. Holden, Phoe-
nix, for Plaintiff/Appellee.

Begam, Lewis, Marks & Wolfe, P.A. by
Lisa Kurtz, Stanley J. Marks, Phoenix, for
Defendants/Appellants.

Broening, Oberg, Woods, Wilson & Cass
by Neal B. Thomas, Phoenix, for Amicus
Curiae Farmers Insurance Company.

## OPINION

FELDMAN, Justice.

Ohio Casualty Insurance Company sought review of a court of appeals' opinion holding the "expected or intended" injury exclusion in a homeowner's insurance policy did not apply when the insured, Joel Henderson, committed an armed robbery that resulted in the death of Padriac Hill. *Ohio Casualty Ins. Co. v. Henderson*, 187 Ariz. 155, 927 P.2d 815 (1996). We granted review to determine if Henderson's active participation in the planning, preparation, and commission of a violent armed robbery fell within the exclusion. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), Ariz. R. Civ.App. P. 23, and A.R.S. § 12–120.24.

## FACTS AND PROCEDURAL HISTORY

On April 11, 1993, Henderson and Damon Kerl, armed with guns, entered a Piccadilly Restaurant, while Noel Jackson waited outside in the getaway car. Once inside the office area, either Henderson or Kerl pointed a gun at an employee's head and ordered him to open the safe. After the employee complied and handed over the cash contents of the safe, one of the assailants, probably Kerl, shot the employee in the head and killed him. The trio then fled the area in the car.

Nine days later, Henderson, Kerl, and Jackson, again armed, entered a movie theater. With guns drawn, they ordered Padriac Hill and some fellow employees, who were working at the concession counter, to the floor. They instructed Hill to open the safe; he did not know the combination and offered to call a manager who could open it. Rather than wait, one of the robbers shot Hill in the head. He died at the scene.

Alleging Henderson was acting in concert with Kerl and Jackson, Hill's parents asserted a wrongful death claim and sought recovery from an Ohio Casualty homeowner's insurance policy. Henderson is an insured under the liability coverage section of the

policy. The "expected or intended" injury exclusion of the policy states:

1. **Coverage E—Personal Liability and Coverage F—Medical Payments to Others**

   do not apply to **bodily injury** or **property damage:**

   a. which is expected or intended by the insured;

Ohio Casualty brought a declaratory judgment action against Henderson and the Hills to determine whether the exclusion negated coverage. Ohio Casualty moved for summary judgment and the Hills filed a cross-motion for summary judgment. For purposes of the motions, the parties stipulated to several facts. First, they agreed that Henderson, Jackson, and Kerl "specifically discussed not harming anyone at the theater with any of the weapons. However, prior to the [robbery in which Hill was killed, Henderson and Kerl] committed a robbery at the Piccadilly Restaurant in which another victim was shot and killed." The parties further agreed that Henderson "gave his gun to [Kerl], a minor, during the robbery, and the bullet from that gun killed Hill," and that "Henderson did not pull the trigger of the gun that killed [Hill]."

The trial court granted summary judgment in favor of Ohio Casualty. The court of appeals reversed, a majority finding that the exclusion did not apply because there was no evidence that Henderson expected or intended the injury that caused Hill's death. 187 Ariz. at 155, 927 P.2d at 815. The exclusion, the court held, did not apply to criminal conduct or to recklessness; the fact that the armed robbery risked serious injury and death did not mean that Henderson expected or intended the resulting bodily injury.[1] *Id.* at 156, 927 P.2d at 816.

The dissenting judge found that Arizona law did not compel the majority's result. He argued that coverage should not be extended because Henderson actively participated in the armed robbery and even furnished the

---

1. The majority stated that "[t]he parties stipulated that Henderson was not the killer and that he did not intend that Hill be shot." *Id.* at 155, 927 P.2d at 815. This is not entirely accurate. As stated above, the parties merely agreed that

the assailants specifically discussed not harming anyone. However, for purposes of our disposition, we believe there is no material difference in the application of law to facts under either version.

gun used to kill Hill. *Id.* at 156, 927 P.2d at 816 (Pelander, J., dissenting). Furthermore, "some type of bodily injury is so substantially certain to occur during the commission of an armed robbery that the law will infer an intent to injure on behalf of the insured actor without regard to his claimed intent." *Id.* (quoting *Raby v. Moe*, 153 Wis.2d 101, 450 N.W.2d 452, 457 (1990)).

We disagree with the majority of the court of appeals and vacate the opinion.

## DISCUSSION

As one commentator aptly remarked, "[i]t is unrealistic to hope that the courts will ever reach anything approaching unanimity in interpreting the 'intended or expected' injury exclusion clause in liability insurance policies." *See* John Dwight Ingram, *The "Expected or Intended" Exclusion Clause in Liability Insurance Policies: What Should it Exclude?*, 13 WHITTIER L.REV. 713, 721 (1992). The same commentator called the current state of the law surrounding the exclusion a "hodgepodge of judicial interpretation." *Id.* at 722. To alleviate the hodgepodge, another commentator has recommended that "[c]ourts that face this issue . . . should do what the majority of courts have done—honor the drafting intent and the plain meaning of the policy language." Kirk A. Pasich, Commentary, *The "Expected or Intended" Exclusion and California Insurance Code Section 533*, 10 No. 21 MEALEY'S LITIG.REP.: INSURANCE 20, 31 (Apr. 2, 1996). We attempt to do so today.

### A. Is the "expected or intended" clause ambiguous?

In addressing the question of coverage in similar cases, many courts have relied on the *contra proferentum* doctrine: if there is an ambiguity in the language of the insurance contract, the ambiguity will be construed against the insurer that writes the contract and in favor of the insured. Applying this doctrine to the language of "expected or intended" injury exclusions, some courts have held such clauses are inherently ambiguous, while others have found no ambiguity whatsoever. *See* Annotation, *Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured*, 31 A.L.R.4th 957, 978 (1984 & Supp.1996). The annotation's author concludes that Arizona treats the "expected or intended" exclusion as unambiguous. *See* 31 A.L.R.4th at 979 (citing *Steinmetz v. National Am. Ins. Co.*, 121 Ariz. 268, 589 P.2d 911 (App.1978), and *Lockhart v. Allstate Ins. Co.*, 119 Ariz. 150, 579 P.2d 1120 (App.1978)). We see no reason to deviate from this approach here because the phrase "expected or intended by the insured" is not so vague as to be incapable of a definition consistent with the expectations of the consumer and the insurance industry. We do not favor artificial findings of ambiguity. In *Transamerica Insurance Group v. Meere* we stated:

> Of course, a finding of ambiguity is the easy way out since it permits the court to create its own version of the contract and to find, or fail to find, ambiguity in order to justify an almost predetermined result. This is an approach we have abandoned. *See Darner Motor Sales v. Universal Underwriters Insurance Co.*, 140 Ariz. 383, 682 P.2d 388 (1984). We believe the proper methodology is to determine the meaning of the clause—where it is susceptible to different constructions—by examining the purpose of the exclusion in question, the public policy considerations involved and the transaction as a whole.

143 Ariz. 351, 355, 694 P.2d 181, 185 (1984). We now turn to explore these considerations in interpreting the phrase "expected or intended."

### B. Construing the "expected or intended" exclusion

#### 1. History of the clause

The original exclusion applied to injuries "intended" by the insured. Around 1960, however, insurance companies redrafted the standard liability policy, adding to the exclusion those injuries and damage "expected" by the insured. At the time, the industry was aware that courts had been almost universally unsympathetic to insurers in construing

the term "intended" in the older policies.[2] *See United Services Auto. Ass'n v. Elitzky,* 358 Pa.Super. 362, 517 A.2d 982, 990 (1986) (*citing* W. PAGE KEETON, INSURANCE LAW 299–300 (1971)). The companies added "expected" to newer policies hoping to broaden the class of excluded injuries and damage. *Id.*

Since this change, courts have grappled with the proper interpretation. The primary areas of disagreement have been: (1) whether the terms "expected" and "intended" are synonymous; (2) whether "expected" connoted an element of conscious awareness by the insured; and (3) what degree of foreseeability is required to exclude an injury as "expected." *See id.*; 31 A.L.R.4th at 957.

Several courts have held that there is no difference between the terms "expected" and "intended," while others have held that the two are not synonymous. *See* 31 A.L.R.4th at 981–83. For instance, in *Grange Mutual Casualty Co. v. Thomas,* the court reasoned that there was no difference in substance between the "expected or intended" exclusionary provision and the "intentional" injuries exclusion. The court believed that if it were to apply a "natural and foreseeable" theory in separately construing "expected," then it would have to exclude coverage for any injury that might have been foreseeable, including injury resulting from unintentional torts involving simple or gross negligence. 301 So.2d 158, 159 (Fla.App.1974).

In *Bay State Insurance Co. v. Wilson,* the court took a contrary view, concluding that the words "expected" and "intended" are not synonymous. It reasoned that were the terms synonymous, no purpose would have been served by amending the form to include both terms within the exclusion. The court held the two words apply to situations that differ from each other because a different degree of proof is necessary for each—a greater degree of proof being required to establish intent than to establish expectation. 96 Ill.2d 487, 71 Ill.Dec. 726, 728, 451 N.E.2d

880, 882 (1983). This approach has gained some acceptance by courts and academics alike who believe that treating the two words as not synonymous "is consistent with the basic rule of contract interpretation that a word in a contract should not be ignored as surplusage if it serves some reasonable purpose." *See* Ingram, *supra,* 13 WHITTIER L.REV. at 715. In using this approach, courts have given different meanings to "expected" and "intended," some even interpreting "expected" in terms of foreseeability. *See* Pasich, *supra,* 10 No. 21 MEALEY'S LITIG.REP.: INSURANCE at 31 ("While a few courts around the country have accepted the insurance carriers' unwarranted efforts to broaden the scope of the 'expected or intended' exclusion to include damage that was not actually expected by the insured, but that may have been 'reasonably foreseeable,' the majority of courts have not done so."). *See, e.g., State Farm Fire & Casualty Co. v. Jenkins,* 147 Mich.App. 462, 382 N.W.2d 796, 798 (1985). This approach, however logical, creates serious problems because it can often result in denying coverage in cases both the insured and insurer clearly meant to cover.

Insurance carriers often argue that all damage is excluded from coverage if an insured intended the act or if the consequences of the act reasonably were foreseeable to someone, even if not foreseen by the insured. However, this argument is not supported by the intent of the drafters. It also is an argument to which courts have not been receptive.

Pasich, *supra,* 10 No. 21 MEALEY'S LITIG.REP.: INSURANCE at 21. Pasich's view of the clause's origin is revealing and sheds considerable light on a reasonable interpretive approach.

The "occurrence" definition with its "expected or intended" exclusion was added to the standard form CGL policy in 1966 when the basis of coverage was changed from an "accident" to an "occurrence."

---

2. Courts had generally held that injury or damage was caused "intentionally" within an "intentional injury exclusion clause" only when the insured had acted with a *specific intent* to cause harm. Under this view, it was not sufficient that the insured's intentional, albeit wrongful, act resulted in unintended harm; it was the harm itself that must have been intended before the exclusion would apply. *See* Annotation, *Liability Insurance: Specific Exclusion of Liability for Injury Intentionally Caused by Insured,* 2 A.L.R.3D 1238, 1241 (1965).

The "expected or intended" exclusion in the definition of "occurrence" replaced the intentional injury exclusions that were contained in the "accident" policies issued before 1966.

At the time the "expected or intended" exclusion was being considered by the drafters of the standard form CGL policy, they considered alternative language as well. This alternative language focused on an objective test of coverage, rather than the subjective test of the "expected or intended" exclusion. It was suggested as part of an exclusion stating:

This policy does not apply to bodily injury or property damage resulting from deliberate acts or omissions of the insured *which with reasonable certainty may be expected to produce injury or damage.*

Minutes of the Joint Forms Committee (May 2–4, 1961), Trial Exhibit No. 977, at 9, *In re Asbestos Ins. Coverage Cases,* Cal. Judicial Council Coord. Proceed. No. 1072 (Cal.S.F.Super.Ct.) (emphasis added), *judgment entered* (Jan. 24, 1990), *appeals pending.* This language was rejected in favor of the "expected or intended" exclusion. As Herbert Schoen, one of the key drafters of the policy language, has testified, this "reasonable certainty" language was rejected because it "was too rough to inflict upon our insureds and would lead to the demand of its deletion." Trial Transcript, Mar. 4, 1986, at 15901, *In re Asbestos Ins. Coverage Cases.* As Mr. Schoen further explained, the only thing that the drafters sought to exclude from coverage was the intentional results of intentional act[s], such as murder. We didn't want to cover that. That is an intentional act with an intentional result.

\* \* \* \* \* \*

After the 1966 standard form CGL policy was introduced, insurance carriers were surveyed to seek their explanation of various policy provisions, including the "expected or intended" language. In response, Travelers Insurance Company stated:

We do not anticipate any problems with the phrase "neither expected nor intended from the standpoint of the insured." Certainly, we will never use the language to deny coverage where the foreseeability of the injury was no more than an element of proof of negligence as this would mean that the liability policy would not cover liability for negligence. The language obliges us to judge coverage from the standpoint of the insured claiming coverage. . . .

Letter from R.J. Fisher to Robert F. Bauer (Aug. 19, 1966), Trial Exhibit No. 2216, *In re Asbestos Ins. Coverage Cases.*

\* \* \* \* \* \*

The Hartford Insurance Group also responded, offering its understanding of the meaning of the term "expected." As Hartford explained, the term "expected" means "expected for a certainty." Letter from Harold Schaffner to Robert F. Bauer (Aug. 25, 1966), Trial Ex. No. 2219, *In re Asbestos Ins. Coverage Cases.*

Pasich, *supra,* 10 No. 21 MEALEY'S LITIG.REP.: INSURANCE at 23–24; *see generally* Kirk A. Pasich, *The Breadth of Insurance Coverage for Environmental Claims,* 52 OHIO ST. L.J. 1131 (1991).

Although many other sections could be quoted, we have confined ourselves to a few excerpts from the Pasich article. Suffice it to say that reviewing the entire history of the clause and the expressed intent of its drafters in the insurance industry, the comment concludes:

Given this history, insurance carriers should not be permitted to distort the meaning of the language of the "expected or intended" exclusion. The insurance industry specifically considered, and rejected, the "objective" foreseeability test recognizing that that test would eliminate coverage for even simple acts of negligence. Courts also should reject any "objective" foreseeability test.

Pasich, *supra,* 10 No. 21 MEALEY'S LITIG.REP.: INSURANCE at 25.

Not all commentators share Pasich's view. Some argue that the insurance industry's intent in drafting the clause was broader and meant to incorporate an objective element. For instance, the clause in the policy before

us purports to exclude injury "intended or expected *by the insured.*" Some authors and some cases, however, have drawn a distinction between such language and that often found in the policy definition of "occurrence": "Injury neither expected nor intended *from the standpoint of the insured.*" The argument goes that by focusing on "the standpoint of the insured," the drafters intended an objective test: what would a reasonable person in the position of the insured have intended or expected, as distinguished from the subjective test indicated by use of the words "by the insured." *See* Paul J. Killion & Monica M. Slakey, *The "Expected or Intended" Provision and California Insurance Code Section 533—The Rest of the Picture,* 10 No. 40 MEALY's LITIG.REP.: INSURANCE 20 (Aug. 27, 1996). Other commentators also argue that use of the words "from the standpoint of the insured" created an objective test. *See, e.g.,* Mark N. Thorsrud, Russell C. Love & Lawrence Gottlieb, *Insurance Coverage for Pollution Liability in Washington. What Constitutes an "Occurrence?" The Insurer's Perspective,* 28 GONZAGA L.REV. 579, 586 (1992/93).

We are unwilling to interpret the clause in question according to so arcane a standard. We do not believe that among the few consumers who actually read a homeowner's policy, even the most sophisticated would be able to draw a distinction by differentiating the two phrases—"from the standpoint of the insured" and "by the insured."

Nor do we believe that application of a foreseeability test is consistent with the purposes for which insurance is purchased. *See Alabama Farm Bureau Mut. Cas. Ins. Co. v. Dyer,* 454 So.2d 921, 925 (Ala.1984) ("[T]he policy term 'expected or intended injury,' cannot be equated with 'foreseeable injury.' "). The average consumer would not reasonably expect that as a result of such a provision, he or she would lose coverage for negligent acts producing unintended but quite foreseeable injuries, these being among the very occurrences for which insurance protection is purchased. *See Darner Motor Sales v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 390–92, 682 P.2d 388, 395–97 (1984). Considering both the consumers' ex-

pectations and the industry's intent, the term "expected" could be given a meaning somewhat broader but akin to "intended"—one that connotes an element of conscious awareness on the insured's part. The exclusion would apply when the insured acted with an intent to harm and with substantial certainty that some significant injury would result, even if the exact injury that occurred was not intended. Thus, substantial certainty is measured on a subjective basis. We believe this approach corresponds, at least in substance, to the views of one of the leading scholars in the field:

> There is no difference in the substance between the language of an exclusionary provision in a homeowners policy which excludes bodily injury which is either "expected or intended" and the language in accident policies which limit the exclusion to "intentional" injuries. Obviously, an "expected injury," as that term is used in an insurance exclusionary clause excluding from the coverage bodily injury expected from the standpoint of the insured, cannot be equated with the foreseeable injury. . . .
> It should be noted that results "neither expected nor intended" deal with intent. While outrageous behavior may supply the necessary intent, ordinarily, willful and wanton conduct or severe intoxication do not produce the necessary intent to cause harm. *In other situations, the nature of the behavior itself clearly indicates that not only was the initial act intentional but the consequences as well as in the case of a shooting, robbery, and assault, regardless of whether the injuries turned out greater than anticipated.*

7A JOHN A. APPLEMAN, INSURANCE LAW AND PRACTICE § 4501.09 (Berdal ed.1979) (emphasis added).

### 2. Case authority

Generally speaking, there are three different lines of authority construing the "expected or intended" exclusion. Two minority approaches have emerged: the first follows the classic tort doctrine of foreseeability, looking to the natural and probable consequences of the insured's act. The second argues that the insured must have had the specific intent to cause the type of injury

suffered. *See Altena v. United Fire & Casualty Co.,* 422 N.W.2d 485, 488 (Iowa 1988) *(citing Pachucki v. Republic Ins. Co.,* 89 Wis.2d 703, 278 N.W.2d 898, 901 (1979)). The former view has been criticized for precluding coverage except in cases in which the insured was not negligent, while the latter, the specific intent view, has received little support. *See* Casenote, *Insurance Law—A Homeowners Insurance Policy Exclusion for Bodily Injury "Expected or Intended by the Insured" Precludes Liability Coverage only for Those Exact Injuries Specifically Expected or Intended by the Insured*—Amco Insurance Co. v. Haht, *490 N.W.2d 843 (Iowa 1992),* 42 DRAKE L.REV. 921 (1993).

These two approaches demonstrate both the extremes and the advantages and disadvantages of each view. On the one hand, if we construe the exclusion clause broadly, coverage would be denied if serious or substantial harm resulted when the insured might have intended only slight or no harm. This construction, however, might further the strong interest in deterring those who knowingly engage in wrongful conduct and fosters the public policy that forbids indemnifying a person for his own willful wrongdoing. *See Meere,* 143 Ariz. at 356, 694 P.2d at 186. On the other hand, if we construe the exclusion narrowly, there would be coverage unless the actual harm inflicted coincided with the particular injury specifically intended by the insured. Expanding the scope of coverage in this manner would serve public policy by compensating injured victims and by spreading the risk to all policyholders. *See Breland v. Schilling,* 550 So.2d 609, 613 (La. 1989). However, so broad a coverage would be contrary to the principle espoused in *Meere* that the insured should not be allowed to control the risk. We believe the exclusion is capable of a more moderate and reasonable interpretation that lies between the two extremes and addresses the insurance industry's intent in inserting the clause.

■■■ That interpretation is more or less expressed by the majority approach, which views the injury as "expected" if the insured intended both the act and to cause some kind of injury. This approach has been described as well-established, well-reasoned, consistent with the parties' reasonable expectations, and consistent with public policy. *See Iowa Kemper Ins. Co. v. Stone,* 269 N.W.2d 885, 887 (Minn.1978). We express the rule as follows: (1) the insured must subjectively intend both the act and to cause some injury; (2) the intent may be actual or may be inferred by the nature of the act and the accompanying substantial certainty that some significant harm will occur. Once it is found that harm was intended or substantially certain to occur, it is immaterial that the actual harm caused is of a different character or magnitude than that intended or expected. *Cf. Pachucki v. Republic Ins. Co.,* 89 Wis.2d 703, 278 N.W.2d 898, 901 (1979) *(citing Butler v. Behaeghe,* 37 Colo.App. 282, 548 P.2d 934 (1976), and *Clark v. Allstate Ins. Co.,* 22 Ariz.App. 601, 529 P.2d 1195 (1975)). Thus, if the insured intended some significant injury, it is not necessary that he or she intend the specific harm that resulted. *See Meere,* 143 Ariz. at 351, 355, 694 P.2d at 185.

In Arizona, our middle ground approach regarding "expected" injury has been expressed by the two-prong test set forth in *Phoenix Control Systems v. Insurance Co. of North America,* in which we interpreted the clause in the following words:

A two-prong inquiry is applied in Arizona to determine an insured's intent. First, intent is determined by looking at the insured's subjective desire to cause harm. [*Citing Farmers Ins. Co. v. Vagnozzi,* 138 Ariz. 443, 675 P.2d 703 (1983), and *Meere,* 143 Ariz. 351, 694 P.2d 181 (1984) ]. An act, even though intentional, must be committed for the purpose of inflicting injury or harm[.]

\*   \*   \*   \*   \*   \*

Second, if the nature and circumstances of the insured's intentional act were such that harm was substantially certain to result, intent may be inferred as a matter of law. *See Continental Ins. Co. v. McDaniel,* 160 Ariz. 183, 772 P.2d 6 (App.1988); *Steinmetz v. National American Ins. Co.,* 121 Ariz. 268, 589 P.2d 911 (App.1978); *Clark v. Allstate Ins. Co.,* 22 Ariz.App. 601, 529 P.2d 1195 (1975).

165 Ariz. 31, 35–36, 796 P.2d 463, 467–68 (1990).

Thus, if the act was intentional and there was either a subjective desire to cause some specific harm (intent) or substantial certainty (expectation) some significant harm would occur, then the insured will not be heard to say that the exclusion does not apply because the injury was more severe or different from what was intended. *Meere*, 143 Ariz. at 359, 694 P.2d at 189.[3] *See* 11 George J. Couch, Couch on Insurance 2d § 44:289 (Rev.ed. 1982). This interpretation remains good law in Arizona, except when the insured claims he or she was provoked, privileged, or justified in acting. *Phoenix Control Systems*, 165 Ariz. at 36, 796 P.2d at 468; *Meere*, 143 Ariz. at 358–59, 694 P.2d at 188–89 (self-defense); *Farmers Ins. Co. v. Vagnozzi*, 138 Ariz. 443, 675 P.2d 703 (1983) (striking a blow in a basketball game in an attempt to get the ball); *Continental Ins. Co. v. McDaniel*, 160 Ariz. 183, 772 P.2d 6 (App.1988).

Therefore, we continue to follow what we deem to be the middle ground, one that meets both the reasonable expectations of consumers and the needs of the insurance industry, and additionally serves the interests of public policy. If and to the extent *Vanguard v. Cantrell*, 18 Ariz.App. 486, 503 P.2d 962 (1972), supports a contrary proposition, we disapprove it.

## C. Application of the law to the facts of this case

■ The circumstances of this robbery made it substantially certain that someone in or around the theater would suffer bodily injury. All three men were carrying loaded guns when they entered the theater during business hours. Henderson armed himself, helped plan the robbery, and actively and willingly participated in it; he even furnished the gun Kerl used to murder Hill. Nine

days earlier, the same three men robbed a Piccadilly Restaurant and killed an employee. Given these facts and applying the above two-pronged analysis, common sense and reason tell us some type of bodily injury was so substantially certain to occur when the three armed men entered a presumably crowded theater during business hours that we must infer an intent to injure without regard to Henderson's claimed lack of specific intent. If the "nature and circumstances of [the] intentional act were such that harm was substantially certain to result, intent may be inferred as a matter of law." *Phoenix Control Systems*, 165 Ariz. at 36, 796 P.2d at 468. *See* Appleman, *supra* § 4501.09; *see also Auto Club Group Ins. Co. v. Marzonie*, 447 Mich. 624, 527 N.W.2d 760, 768 (1994) ("In other words, coverage is precluded if the insured's claim that he did not intend or expect the injury 'flies in the face of all reason, common sense and experience.' ").

In *Continental Western Insurance Co. v. Toal*, also involving an armed robbery, the Minnesota Supreme Court stated:

It is clear from the testimony that while Ross and Toal did not specifically intend to shoot anyone during the robbery, they did intend to threaten people with the guns and to use them if it became necessary to accomplish the robbery. Ross knew that at least four of the participants were carrying guns. He claimed that it never entered his mind that anyone would be shot, although he admitted that it was no "great surprise" or "shock" when the robbers discovered that someone had been shot.

309 Minn. 169, 171, 244 N.W.2d 121, 123 (1976). The court went on to hold:

[T]he facts of the instant case compel the conclusion that the insureds followed through with the armed robbery with knowledge that someone might well be injured or killed in the process. The robbery was a well planned operation. The

---

3. We believe, however, that when the factors involving public policy and the purpose of the contractual exclusion are considered, the proper interpretation of the clause in question is that it excludes indemnification or coverage when the insured intentionally acts *wrongfully* with a purpose to injure. When he acts wrongfully, he commits an intentional tort by performing an act designed to inflict injury. He will not be allowed

under such circumstances to deny a basic intent demonstrated by his acts.... Nor will he be allowed to escape from the exclusionary clause by claiming that he did not intend the precise injury—in character or magnitude—that in fact occurred.

*Meere*, 143 Ariz. at 359, 694 P.2d at 189 (internal citations omitted).

insureds knew that several of the participants would be carrying loaded guns. Ross had supplied two of these loaded guns and even instructed Toal that "all you got to do is pull the trigger." ... *In short, the insureds intentionally prepared themselves to inflict serious injury in order to facilitate the armed robbery.* Thus, we find the insureds' acts to be of such a calculated and remorseless character that we infer an "intention to inflict an injury" as a matter of law.

*Id.* at 177–78, 244 N.W.2d at 126 (emphasis added).

In *Toal,* as in the present case, the injury was expected or intended because the insured intentionally engaged in an armed robbery under circumstances that made it not only foreseeable but substantially certain that some significant harm would result. *See Phoenix Control Systems,* 165 Ariz. at 36, 796 P.2d at 468.

It is therefore of no consequence that Henderson may not have intended the result—murder. *Meere,* 143 Ariz. at 355, 694 P.2d at 185. The injury was expected because the insured acted with substantial certainty that significant bodily harm would result. *Phoenix Control Systems,* 165 Ariz. at 35–36, 796 P.2d at 467–68. Henderson thus satisfied the test and therefore "controlled the loss and ... fell within the category of risks which both the insurance contract and public policy consider uninsurable." *Meere,* 143 Ariz. at 358, 694 P.2d at 188.

## CONCLUSION

Adopting an interpretation of the "expected or intended" exclusion that comports best with both consumer expectation and insurance industry intent, we find, under the facts of this case, that coverage is excluded by the "expected or intended" clause in the Ohio Casualty policy. We vacate the court of appeals' opinion and affirm the trial court's grant of summary judgment in favor of Ohio Casualty.

ZLAKET, C.J., JONES, V.C.J., and MOELLER and MARTONE, JJ., concur.