6 P.3d 758

**Angela SALERNO and Alcario Lucero, Plaintiffs–Appellees/Cross–Appellants,**

**v.**

**ATLANTIC MUTUAL INSURANCE COMPANY, a New York corporation, Defendant–Appellant/Cross–Appellee.**

No. 1 CA–CV 99–0311.

Court of Appeals of Arizona, Division 1, Department B.

July 6, 2000.

Review Denied January 9, 2001.

---

**56**

Law Offices of Joel R. Kirschbaum, P.L.C. by Joel R. Kirschbaum, Phoenix, for Appellees/Cross–Appellants.

The Cohen Law Firm by Larry J. Cohen, Phoenix, for Appellant/Cross–Appellee.

## OPINION

TOCI, Judge.

¶ 1 Atlantic Mutual Insurance Company ("Atlantic") appeals from the grant of summary judgment to Angelo Salerno and Alcario Lucero ("Salerno") finding an Atlantic insurance policy covered Salerno's injuries. Salerno cross-appeals from summary judgment granted to Atlantic because Salerno failed to timely give notice of a claim under the policy's medical expense payments provision. We reverse both judgments and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 On appeal from summary judgment, we view the evidence most favorably to the non-moving party and draw all reasonable infer-

ences in that party's favor. If reasonable persons could come to different conclusions from the evidence, summary judgment is improper. *Transamerica Ins. Co. v. Doe,* 173 Ariz. 112, 114, 840 P.2d 288, 290 (1992).

¶ 3 The facts here are largely undisputed. On November 5, 1993, Angela Salerno was in the library of Cotton Boll Elementary School ("the School") for a book fair when she fell and was injured. The school is part of the Peoria Unified School District ("the District"). Scholastic Book Fairs, Inc. ("Scholastic") provided the books for the fair.

¶ 4 In October 1994, Salerno sued the District and Scholastic, claiming that they negligently arranged the book fair in an area with a lowered floor and failed to warn of the change in level. She also claimed that the colorful books distracted her attention and contributed to her fall. The complaint further alleged that Atlantic provided insurance to Scholastic under a commercial general liability policy and that a vendor's endorsement provision provided more limited coverage to the District and School. Atlantic, however, denied coverage and declined to defend either the District or the School.

¶ 5 Salerno did not formally request payment of medical expenses under the medical payments provision of Atlantic's policy until March 1996. By letter, she stated her medical expense claim arose from the fall that prompted her suit against Scholastic.

¶ 6 In April 1996, the trial court dismissed Scholastic from the lawsuit, ruling that the School alone was responsible for any negligence because it controlled the premises and set up the book display. The District, on behalf of the School, then entered a *Damron*[1] agreement with Salerno and stipulated to entry of a $900,000 judgment. The District also assigned all of its rights against Atlantic to her. Salerno in turn agreed not to execute the judgment against the District.

¶ 7 On December 31, 1996, Salerno filed this lawsuit against Atlantic. The complaint alleged theories related to the vendor's en-

---

1. *See Damron v. Sledge,* 105 Ariz. 151, 460 P.2d 997 (1969) (upholding settlement and assignment to plaintiffs of insured's claim against insurer after it failed to defend liability lawsuit).

dorsement to the policy,[2] as well as theories under the medical payments clause.[3] It also alleged claims for bad faith and punitive damages and sought an award of attorney's fees.

¶ 8 The parties filed cross-motions for summary judgment. The trial court granted summary judgment to Atlantic on all medical payments-related counts; it granted partial summary judgment to Salerno on the vendor's endorsement coverage claims, finding coverage but leaving open the amount of damages. The bad faith and punitive damages claims under the vendor's endorsement and the attorney's fees claim were also unresolved. The judgment recited Arizona Rule of Civil Procedure 54(b) language. Atlantic timely appealed, and Salerno timely cross-appealed.

## II. DISCUSSION

### A. Jurisdiction

¶ 9 We may examine our jurisdiction of an appeal sua sponte. *Arvizu v. Fernandez*, 183 Ariz. 224, 226, 902 P.2d 830, 832 (App.1995). Atlantic's docketing statement asserted Arizona Revised Statutes Annotated ("A.R.S.") section 12–2101(B) (1994) as a ground for jurisdiction, but that section allows appeals from final judgments that "dispose of all claims and all parties." If a judgment disposes of fewer than all claims but ultimately disposes of one separate claim in a multi-claim action, the trial court may certify a judgment as final. *Davis v. Cessna*

*Aircraft Corp.*, 168 Ariz. 301, 304, 812 P.2d 1119, 1122 (App.1991). "The determination rests on whether the different claims could be separately enforced." *Sisemore v. Farmers Ins. Co. of Ariz.*, 161 Ariz. 564, 566, 779 P.2d 1303, 1305 (App.1989).

¶ 10 Atlantic's judgment finally disposed of all claims related to the medical payments provision; those claims are enforceable apart from Salerno's other claims, and they require proof of different facts. Similarly, claims for coverage are separate from claims for breach of the duty of good faith and fair dealing. *See Deese v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504, 509, 838 P.2d 1265, 1270 (1992) (insurer may be liable for bad faith regardless of merits of claim under the policy). Thus, the trial court did not abuse its discretion in certifying the judgment on the medical payments claims as final.

¶ 11 Salerno's partial summary judgment under the vendor's endorsement, however, left undecided the amount of damages and was not an ultimate disposition of those claims. *See Empress Beauty Supply, Inc. v. Price*, 116 Ariz. 34, 35, 567 P.2d 350, 351 (App.1977) (summary judgment is not final if damages are yet to be decided).

¶ 12 Nevertheless, section 12–2101(G) creates a statutory exception and allows a party to appeal from an "interlocutory judgment which determines the rights of the parties and directs an accounting or other proceeding to determine the amount of the

---

2. The vendor's endorsement provides in relevant part:

    WHO IS AN INSURED (Section II) is amended to include ... any person or organization (referred to below as 'vendor') ... but only with respect to 'bodily injury' or 'property damage' arising out of 'your products' ... which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

    . . . .

    f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product.

3. The medical payments clause provides in part:

    a. We will pay medical expenses ... for 'bodily injury' caused by an accident:

. . . .

    (3) Because of your operations;
    provided that:
    (1) The accident takes place in the 'coverage territory' and during the policy period;
    (2) The expenses are incurred and reported to us within one year of the date of the accident; and
    (3) The injured person submits to examination. . . .

    b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:
    (1) First aid at the time of an accident;
    (2) Necessary medical, surgical, x-ray and dental services. . . .

The medical payments clause is subject to a number of other exclusions not relevant to this appeal.

recovery." A.R.S. § 12–2101(G) (1994). This exception applies if the judgment finally resolves the parties' rights as to liability, and the only unresolved question is the amount of recovery. *See Cook v. Cook*, 26 Ariz.App. 163, 168, 547 P.2d 15, 20 (1976). Although Rule 54(b) does not expressly refer to section 12–2101(G), use of Rule 54(b) language may "indicat[e] the finality of the judgment on the liability issue." *Id.*

¶ 13 Therefore, the trial court's judgment was a final decision on liability under the vendor's endorsement and left open only the amount of damages. We have jurisdiction of the appeal pursuant to section 12–2101(G) and of the cross-appeal pursuant to section 12–2101(B).

## B. Vendor's Endorsement

¶ 14 Interpretation of an insurance contract is a question of law that we review de novo. *See Benevides v. Arizona Property & Cas. Ins. Guar. Fund*, 184 Ariz. 610, 613, 911 P.2d 616, 619 (App.1995). Only if an insured's claims fall within the coverage provisions will we address the meaning and effect of policy exclusions. *See United States Fidelity & Guar. Corp. v. Advance Roofing & Supply Co.*, 163 Ariz. 476, 483, 788 P.2d 1227, 1234 (App.1989) (exclusions subtract from coverage granted). Ambiguous provisions are construed against the insurer if they are actually ambiguous. *Thomas v. Liberty Mut. Ins. Co.*, 173 Ariz. 322, 325, 842 P.2d 1335, 1338 (App.1992). Thus, if a clause is susceptible to different constructions, we examine its purpose, relevant public policy concerns, and the entire transaction. *See Ohio Cas. Ins. Co. v. Henderson*, 189 Ariz. 184, 186, 939 P.2d 1337, 1339 (1997).

¶ 15 Atlantic contends that the trial court erred in finding coverage for Salerno's injuries under the vendor's endorsement be-cause her injuries arose from maintenance of the School's premises and not from Scholastic's products. The endorsement covers " 'bodily injury' ... arising out of 'your [Scholastic's] products' ... which are distributed or sold in the regular course of the vendor's [the School's] business."[4] No prior Arizona cases have considered the scope of coverage under a vendor's endorsement, but the language is similar to that in automobile liability and homeowners' policies referring to incidents "arising out of" the ownership, maintenance, use, loading, or unloading of vehicles. *See, e.g., Allstate Ins. Co. v. Powers*, 190 Ariz. 432, 434, 949 P.2d 521, 523 (App.1997).

¶ 16 In interpreting "arising out of" language, we have not required direct proximate cause between the vehicle and the injury but only some causal relation or connection between the two. *State Farm Mut. Auto. Ins. Co. v. Loesl*, 194 Ariz. 40, 42, 977 P.2d 140, 142 (App.1999). The vehicle, however, must do more than facilitate the injury, *Ruiz v. Farmers Ins. Co.*, 177 Ariz. 101, 103, 865 P.2d 762, 764 (1993), and "the accident must be caused by a negligent act in the use of the motor vehicle." *Associated Indem. Corp. v. Warner*, 143 Ariz. 585, 588, 694 P.2d 1199, 1202 (App.1983), *modified on other grounds*, 143 Ariz. 567, 694 P.2d 1181 (1985).

¶ 17 By analogy, the books must have "caused and produced [the] injury." *Ruiz*, 177 Ariz. at 103, 865 P.2d at 764. Salerno did not allege that the books themselves caused an injury. Even viewing the facts in her favor, at most the books facilitated her injury by attracting her attention. This attraction did not cause any injury, however, although it may have prevented her from paying proper attention to the actual cause of injury, the change in the floor level. The drop in the floor and the failure to warn of it,

4. "Your product" is defined in the policy to mean:
  a. Any goods or products, ... manufactured, sold, handled, distributed, or disposed of by:
    (1) You; ... and
  b. Containers ... materials, parts or equipment furnished in connection with such goods or products.
  "Your product" includes:
  a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product'; and
  b. The providing of or failure to provide warnings or instructions.
  "Your product" does not include ... other property rented to or located for the use of others but not sold.

rather than the books, caused Salerno's injury. *Cf. Ruiz*, 177 Ariz. at 102–03, 865 P.2d at 763–64 (injury was caused by how shotgun was used rather than how car was used); *Warner*, 143 Ariz. at 588, 694 P.2d at 1202 (use of auto battery to charge airplane battery caused airplane to start and hit another plane; negligence was in airplane's use not automobile's use).

¶ 18 Other jurisdictions have reached similar conclusions. For example, an Illinois court held that when a delivery person slipped on a loading dock, the injury did not arise out of the product being delivered but out of the dangerous condition of the dock and therefore a policy on the product did not cover the injury. *See Dominick's Finer Foods, Inc. v. American Mfrs. Mut. Ins. Co.*, 163 Ill.App.3d 149, 114 Ill.Dec. 389, 516 N.E.2d 544, 546 (1987). Similarly, when a display model struck a store patron, the store sued the product supplier's insurer under a vendor's endorsement; the court held that the model was not for sale and the product did not cause the injury so that the store was not an insured under the vendor's endorsement. *Hartford Acc. and Indem. Co. v. Bennett*, 651 So.2d 806, 807–08 (Fla.App. 1995).

¶ 19 Salerno cites *The Pep Boys v. Cigna Indemnity Insurance Co.*, 300 N.J.Super. 245, 692 A.2d 546 (1997), and *Sportmart, Inc. v. Daisy Manufacturing Co.*, 268 Ill.App.3d 974, 206 Ill.Dec. 355, 645 N.E.2d 360 (1994), to argue that vendor's endorsements may provide coverage even if the vendor committed an independent negligent act. In both cases, however, the injuries were caused by the vendor's product, not by the vendor's negligently maintained premises. These cases are consistent with our holding that for the provision to cover the injury, the product must cause the injury.

¶ 20 Salerno also contends that because the underlying policy is a commercial general liability policy, the endorsement gives the District general liability coverage. The policy language, however, precludes such an in-terpretation. The vendor's endorsement adds the School as an insured, but only for bodily injury "arising out of your [Scholastic's] products which are ... sold in the regular course of the vendor's [the School's] business." It does not purport to provide general commercial liability insurance for all aspects of the books' sale nor provide premises liability coverage for all locations at which the books are sold.

¶ 21 Finally, Salerno cites *K–Mart Corp. v. Fireman's Fund Insurance Co.*, 88 F.Supp.2d 767 (E.D.Mich.2000), to argue that the "demonstration exclusion" to the vendor's endorsement provides coverage.[5] We reject the Michigan court's reasoning because it interprets an exclusion clause without first determining whether coverage exists under the insuring clause; it also construes all ambiguities against the insurer without attempting to discern the meaning of a challenged clause, its purpose, or any public policy considerations. This approach is inconsistent with how we interpret insurance contracts. *See, e.g., Advance Roofing & Supply Co.*, 163 Ariz. at 483, 788 P.2d at 1234; *Ohio Cas.*, 189 Ariz. at 186, 939 P.2d at 1339 (courts try to find actual meaning before finding ambiguity).

¶ 22 Therefore, because the insuring clause clearly does not provide coverage for Salerno's injuries, we reverse the trial court's judgment. We need not consider any exclusion provisions.

## C. Medical Payments Provision

¶ 23 Salerno's cross-appeal asserts that the trial court erred in concluding that her failure to provide notice of the claim within one year of her injury bars any coverage under the medical payments provision. She argues that she did not know the medical payments coverage existed until after the time limit had expired; that her notice in March 1996 was reasonably soon after learning of the coverage in December 1995; and that Atlantic knew of her fall and resulting damages no later than February 13, 1995,

---

5. The provision provides in part that the insurance does not apply to the "[d]emonstration ... operations, except ... [if] performed at the vendor's premises in connection with the sale of the product." Salerno contends that the book display at the book fair is a "demonstration operation."

when Scholastic forwarded to it Salerno's complaint against Scholastic. Finally, she argues that Atlantic was not actually prejudiced by the late notice, citing *Globe Indemnity Co. v. Blomfield*, 115 Ariz. 5, 562 P.2d 1372 (App.1977).

¶ 24 It has long been the rule that an insurer cannot escape liability under an insurance contract due to the insured's failure to give notice within the contract's time limits unless the insurer can show prejudice. *See, e.g., Lindus v. Northern Ins. Co.*, 103 Ariz. 160, 164, 438 P.2d 311, 315 (1968) (homeowner's and automobile policies); *Liberty Mut. Fire Ins. Co. v. Mandile*, 192 Ariz. 216, 223–24, 963 P.2d 295, 302–03 (App.1997) (UIM coverage); *Globe Indem.*, 115 Ariz. at 7, 562 P.2d at 1374; *Arizona Title Ins. and Trust Co. v. Pace*, 8 Ariz.App. 269, 271, 445 P.2d 471, 473 (1968) (title insurance); *cf. Zuckerman v. Transamerica Ins. Co.*, 133 Ariz. 139, 147, 650 P.2d 441, 449 (1982) (condition shortening time to file suit unenforceable if it would result in unjust forfeiture); *Liberty Mutual*, 192 Ariz. at 224, 963 P.2d at 303 (delay alone is not prejudice).

¶ 25 Atlantic does not assert any prejudice from the lack of notice but argues the above authorities apply only to liability notice provisions rather than medical payments notice provisions. *Cf. Pace*, 8 Ariz.App. at 271, 445 P.2d at 473 (refusing to enforce notice provision in title insurance policy). Atlantic contends that medical payments coverage is voluntary and independent of fault and that courts should not discourage insurers from providing it by refusing to enforce contractual limits.

¶ 26 In *Caballero v. Farmers Insurance Group*, 10 Ariz.App. 61, 64, 455 P.2d 1011, 1014 (1969), this court stated that the parties could use any provisions they wished to govern payment of medical expense benefits. In *Hartford Accident & Indemnity Co. v. Chiate*, 13 Ariz.App. 321, 322, 476 P.2d 527, 528 (1970), we said that "contracting parties are wholly free to make such agreement as they choose with respect to medical expense coverage." But both cases challenged provisions offsetting medical expense payments against payments under policy liability provisions. *Caballero*, 10 Ariz.App. at 63, 455

P.2d at 1013; *Chiate*, 13 Ariz.App. at 323, 476 P.2d at 528. We enforced the offsets as long as they did not violate statutory minimum liability limits. But in neither case did the notice of claim provision eliminate the contracted-for benefit entirely nor did the court acknowledge rule that notice provisions are not enforced absent prejudice.

¶ 27 Moreover, the Arizona Supreme Court limited *Caballero* by holding that offset provisions may be used only to prevent duplication of benefits and if "the endorsement will not deprive the insured of full recovery for her loss." *Schultz v. Farmers Ins. Group*, 167 Ariz. 148, 152, 805 P.2d 381, 385 (1991). Thus, limitations are enforceable if they do not violate our public policy of allowing injured persons to receive the bargained-for coverage. We decline to apply *Caballero* and *Hartford* in this context, however, and instead apply the rule that late notice of claim will not bar recovery absent actual prejudice. The trial court therefore erred in ruling that Salerno's claims were barred.

¶ 28 Although Atlantic argues that the trial court could have denied Salerno's claim because she was not the proper party to present it, Atlantic's attorney conceded at oral argument on the motion for summary judgment that the medical pay provision "would be applicable but for the time limit." Atlantic therefore has waived all other arguments. *See Cohn v. Industrial Comm'n*, 178 Ariz. 395, 398, 874 P.2d 315, 318 (1994)(issues not presented to the trial court are generally not considered on appeal).

## D. Attorney's Fees

¶ 29 Both parties requested attorney's fees pursuant to A.R.S. section 12–341.01(A), which permits the award of fees to a prevailing party in a dispute arising out of contract. Each party prevailed on the issue it raised on appeal. Also, the appeal raised an issue of first impression, and both sides asserted meritorious claims and defenses. We thus decline to award fees to either party. *See Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 394, 710 P.2d 1025, 1049 (1985).

### III. CONCLUSION

¶ 30 We reverse the trial court's judgments and remand for further proceedings. We decline the requests for attorney's fees on appeal.

CONCURRING: SUSAN A. EHRLICH, Presiding Judge, and MICHAEL D. RYAN, Judge.