CATLIN SYNDICATE 2003, Plaintiff,

v.

**Eric L. RINKUS, et al., Defendants.**

**Case No. 11–60290–CIV.**

United States District Court,
S.D. Florida.

Signed July 16, 2012.

Entered July 17, 2012.

---

Gary Melvin Hellman, Goldman & Hellman, Fort Lauderdale, FL, for Plaintiff.

Steven Earl Seward, Hinshaw & Culbertson, LLP, Fort Lauderdale, FL, Kara Berard Rockenbach, Methe & Rockenbach, P.A., Kristi Bergemann Rothell, Gaunt Pratt Radford & Methe PA, West Palm Beach, FL, for Defendants.

## *ORDER*

DONALD M. MIDDLEBROOKS, District Judge.

THIS CAUSE is before the Court upon cross Motions for Summary Judgment (DE 37–38), filed by Plaintiff Catlin Syndicate 2003 ("Catlin"), and, Defendants Eric and Shannon Rinkus (individually, "Eric" and "Shannon", collectively, "the Rinkuses"), individually, and on behalf of their minor child Z.R. Catlin, the insurer, filed this declaratory action seeking a determination that it is not under a duty to defend or indemnify Defendant Gulfstream Crane LLC, ("Gulfstream"), its insured, in an underlying action filed by the Rinkuses in state court. I have reviewed the Motions, the record in this case, and am otherwise fully advised in the premises.

### I. Facts

Catlin initiated this action in order to determine whether it is obligated to defend and indemnify Gulfstream in an underlying action ("Underlying Action") filed by the Rinkuses against Catlin and others in the Seventeenth Judicial Circuit in and for Broward County, Florida. In the Underlying Action, Eric seeks damages against Catlin arising from Catlin's purported failure to stop its employees, including Eric, from operating high-altitude cranes on a construction site during 25 mile per hour winds caused by the passing Hurricane Charlie. (*See* DE 54–Attachment 1 at ¶¶ 13; 29(h); 31). Eric's wife, Shannon, and daughter, Z.R., seek damages against Gulfstream and others arising from their loss of consortium.

Allegedly, on August 14, 2004, "the wind caused the crane cable and spreader bar" of Gulfstream's high-altitude crane to swing into ... the building and forms" on the construction site. (*See* DE 54–Attachment 1 at ¶ 18). Indeed, the individual

purportedly operating Gulfstream's on-site high-altitude crane could not set the crane's load on the ground because the "crane cable and crane spreader" were unstable due to strong gusts of wind. (*See* DE 54–Attachment 1 at ¶ 18). To stabilize the crane cable, Gulfstream instructed Eric to use a guide wire, which was attached to the crane cable, to manually guide the load to the ground. (*See* DE 54–Attachment 1 at ¶ 20). In order to use the guide wire, Eric purportedly had to stand below the load as it was being lowered to the ground. (*See* DE 54–Attachment 1 at ¶ 20). While Eric was underneath the load, the guide wire wrapped around a piece of the building, causing the crane, crane spreader, and the load to crash down upon Eric, rendering him paraplegic. (*See* DE 54–Attachment 1 at ¶ 21).

In 2009, Gulfstream filed for bankruptcy, which resulted in an automatic stay of the Underlying Action. (Complaint at ¶ 12). At some point after it filed bankruptcy, Gulfstream entered into an agreement with the Rinkuses, in which Gulfstream agreed to proceed with the Underlying Action. In exchange, unless they succeeded on any bad faith claim, the Rinkuses' promised to only collect upon a judgment up to the amount of Gulfstream's insurance coverage. (Complaint at ¶ 13–14). On the date Eric was injured, Gulfstream's commercial general liability insurance policy ("Policy"), issued by Catlin, was in effect. (Complaint at ¶¶ 1; 8; Answer at ¶ 8). Once the stay was lifted, Catlin provided counsel for Gulfstream; however, Catlin now moves for summary judgment claiming that the allegations set forth in the Rinkuses' Complaint do not trigger either a duty to defend or indemnify under the terms of the Policy. The Rinkuses oppose Catlin's Motion and argue that as a matter of law Catlin is under a duty to defend and indemnify Gulfstream in the Underlying Action.

## II. Legal Standard

In an action for declaratory judgment, "[s]ummary judgment is appropriate ... when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." *Northland Cas. Co. v. HBE Corp.,* 160 F.Supp.2d 1348, 1358 (M.D.Fla.2001) (citations omitted). In Florida, an insurer's duty to defend a lawsuit against its insured is determined by looking to the terms of the policy and the allegations of the complaint filed against the insured. *See Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.,* 358 So.2d 533, 536 (Fla.1977). If an insurer asserts it is not under a duty to defend and indemnify the insured in an underlying action because of a policy exclusion, the insurer bears the burden of proving the applicable exclusion eliminates its duty to defend and indemnify a claim. *LaFarge Corp. v. Travelers Indem. Co.,* 118 F.3d 1511, 1516 (11th Cir.1997) (citing *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.,* 470 So.2d 810, 813 (Fla. 1st DCA 1985)).

## III. Discussion

### 1. Underlying Action

In general, Florida's Workers' Compensation Law precludes Eric, an employee, from suing Gulfstream, his employer, for injuries he sustained during the course of his employment. *See* Fla. Stat. § 440.09(1) ("An employer must pay compensation or furnish benefits required by this chapter if the employee suffers an accidental compensable injury or death arising out of work performed in the course and the scope of employment."); *see also* Fla. Stat. § 440.11(1) (providing that workers' compensation is generally an employee's exclusive remedy to recover

damages arising from an injury he suffers while performing work during the course and scope of his employment). The Florida legislature codified the following exception to Florida's Workers' Compensation Law, which provides:

b) When an employer commits an intentional tort that causes the injury or death of the employee. For purposes of this paragraph, an employer's actions shall be deemed to constitute an intentional tort and not an accident only when the employee proves, by clear and convincing evidence, that:

1. The employer deliberately intended to injure the employee; or

2. The employer engaged in conduct that the employer knew, based on prior similar accidents or on explicit warnings specifically identifying a known danger, was virtually certain to result in injury or death to the employee, and the employee was not aware of the risk because the danger was not apparent and the employer deliberately concealed or misrepresented the danger so as to prevent the employee from exercising informed judgment about whether to perform the work.

See Fla. Stat. § 440.11(b).

In the Underlying Action, Eric alleges Gulfstream's failure to stop its employees, including Eric, from operating high-altitude cranes equated to Gulfstream "engaging in conduct that it knew ... was virtually certain and/or substantially certain to result in death or injury to" Eric. (See DE 54–Attachment 1 at ¶ 31). Shannon and Z.R. also seek to recover damages against Gulfstream for loss of consortium.

### 2. Policy

At the time of the accident, Gulfstream was insured by Catlin under a "Commercial General Liability" Policy. (See DE 12–Attachment 1 at 1). In Coverage A, Catlin agreed to insure Gulfstream for "sums ... that [Gulfstream] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which" this Policy applies. (See DE 12–Attachment 1 at § 1(a)). This provision covered claims for "bodily injury" if the injury was "caused by an 'occurrence'", which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (See DE 12–Attachment 1 at §§ 1(a); 5(12)). Additionally, Catlin assumed "the ... duty to defend" Gulfstream "against any 'suit' seeking" bodily injury damages; however, Catlin expressly provided that it has "no duty to defend [Gulfstream] against any 'suit' seeking damages for ... 'bodily injury' or 'property damage' to which this insurance does not apply." (See DE 12–Attachment 1 at § 1(a)). In part two of Coverage A, Catlin enumerated several types of "bodily injur[ies]" that were excluded from coverage under the Policy.

### 3. Exclusions

In the instant matter, Catlin contends it has no duty to defend or indemnify Gulfstream because the plain language of the Policy unambiguously excludes from coverage Eric's sole claim against Gulfstream which arises from Gulfstream's alleged failure to stop its employees, including Eric, "from engaging in conduct that it knew ... was virtually certain and/or substantially certain to result in death or injury to" Eric. (See DE 54–Attachment 1 at ¶ 31). If Eric's claim is not covered under the Policy then his wife's and daughter's loss of consortium claims are also excluded from coverage because they are derivative of Eric's claim. See Bravo v. United States, 532 F.3d 1154, 1170 (11th Cir.2008) (holding that under Florida law a loss of consortium claim is a derivative claim).

Accordingly, Catlin's duty to defend Gulfstream against Shannon's and Z.R.'s claims hinges upon whether Eric's claim is covered. Therefore, I will first address whether the (1) expected or intended injury exclusion; (2) the employer's liability exclusion; or (3) the workers' compensation exclusion exclude Eric's claim from coverage under the Policy.

### a. Expected or Intended Injury

The Parties disagree over the applicability of the expected or intended injury exclusion. This exclusion provides in pertinent part that the Policy does not cover " 'bodily injury' . . . expected or intended from the standpoint of the insured." (See DE 12–Attachment 1 at § 2(a)). Simply put, Catlin argues that in order for Eric to state a tort claim against Gulfstream, which is not precluded by Florida's Workers' Compensation Law, Eric had to allege Gulfstream was "virtually certain" its actions would result in his injury; thus, by its very nature, Eric's claim cannot be covered under the Policy because Gulfstream allegedly expected or intended Eric's injury to occur.

In response, Eric argues that this exception does not bar his claim from coverage because "the allegations of the underlying action clearly advance allegations sounding in negligence." (See DE 39 at 9). This argument is neither persuasive nor compelling. Indeed, all the cases offered by Eric in support of his argument were either decided prior to the codification of the intentional tort exception, which requires an employee to allege his employer was "virtually certain" as opposed to "substantially certain" that his conduct would result in an injury, or not on point.

Eric's argument appears to rest on the fact that he alleged Gulfstream was either "virtually certain" or, alternatively, "substantially certain" that its actions would result in Eric's injuries. (See DE 54–

Attachment 1 at ¶ 31). Apparently, because he alleged both standards, Eric believes his claims are not excluded by the expected or intended injury provision because he alleges both an intentional tort claim and a negligence claim against Gulfstream. While clever, Eric's inclusion of the "substantially certain" standard in his sole claim against Gulfstream is superfluous and does not aid him in circumventing the unambiguous expected or intended injury exclusion.

Originally, in common law, in order to state an intentional tort claim against his employer, an employee only had to allege his employer was "substantially certain" that its conduct would injure the employee; however, as of October 1, 2003, the Florida Legislature codified the common-law intentional tort exception, which replaced the "much more liberal" substantial-certainty standard with the higher "virtual-certainty" standard. See 2003 Fla. Sess. Law Serv. (West); see also Travelers Indem. Co. v. PCR Inc., 889 So.2d 779, 784 n. 5 (Fla.2004). The "virtually certain" standard adopted by the Florida legislature was first articulated by the New Jersey Supreme Court in Millison v. E.I. du Pont de Nemours & Co., 101 N.J. 161, 178, 501 A.2d 505 (1985). See Travelers Indem. Co. v. PCR Inc., 889 So.2d 779, 784 n. 5 (Fla. 2004).

In Millison, plaintiffs sued defendants, their employer and its agents, in tort for (1) knowingly exposing them to asbestos and (2) fraudulently concealing the fact that company medical examinations revealed that certain plaintiffs had contacted asbestos-related diseases. Millison, 101 N.J. at 168, 501 A.2d 505. "The essential question [in Millison] . . . bec[a]me[ ] what level of risk-exposure is so egregious as to constitute an 'intentional wrong.' " Id. at 177, 501 A.2d 505. After considering both the record and the legislative history

of New Jersey's workers' compensation statutes, the New Jersey Supreme Court ruled that an employer's conduct must be virtually certain to result in an employee's injury in order to avoid the exclusivity of workers' compensation. Applying this standard, they found that plaintiffs' first claim failed as a matter of law because "[a]lthough defendants' conduct in knowingly exposing plaintiffs to asbestos clearly amounts to deliberately taking risks with employees' health ... the mere knowledge and appreciation of a risk-even the strong probability of a risk-will come up short" of the level of intent needed to state a claim against an employer in tort. *Id.* at 178, 501 A.2d 505.

After considering *Millison* and Florida's Workers' Compensation Law, in order for Eric to state. a cause of action against Gulfstream arising from Gulfstream's tortious conduct, Eric, at a minimum, *must* allege that Gulfstream was "virtually certain" that its actions would result in his injury. Thus, if I considered Eric's allegation that Gulfstream was only "substantially certain" that its actions would result in Eric's injury, Catlin would not have a duty to defend Gulfstream against Eric's claim because Eric failed to state a claim as a matter of law. *See Allstate Ins. Co. v. Ginsberg,* 351 F.3d 473, 475 (11th Cir.2003) (affirming the district court's declaration that insurer did not have a duty to defend or indemnify insured because the underlying complaint failed to state a cause of action under Florida law for invasion of privacy).[1] Accordingly, I will ignore Eric's superfluous allegation that Gulfstream was "substantially certain" its actions would result in Eric's injury. *See State Farm Fire and Cas. Co. v. Steinberg,* 393 F.3d 1226, 1231 (11th Cir.2004) (holding that under

Florida law a court need not consider conclusory "buzz words" that are not sufficient to trigger coverage).

■ Turning to the language of the Policy and Eric's claim, I find that Catlin is entitled to judgment in its favor because the expected or intended injury exclusion relieves Catlin of any duty to defend or indemnify Gulfstream in the Underlying Action. While recognizing that "intentional act exclusions are limited to the express terms of the policies and do not exclude coverage for injuries more broadly deemed under tort law principles to be consequences flowing from the insured's intentional acts", *Travelers Indem. Co. v. PCR Inc.,* 889 So.2d 779, 787 (Fla.2004), I find the expected or intended exclusion is unambiguous and excludes Eric's claim from coverage.

Looking at the plain meaning of the exclusion's language, this provision clearly excludes from coverage bodily injury as long as the *injury* was expected or intended from Gulfstream's standpoint. If, as alleged by Eric, Gulfstream "was virtually certain" that its actions would "result in death or injury to" Eric, Eric's claim against Gulfstream is undoubtedly excluded from coverage under the Policy. *See Hirst v. Thieneman,* 905 So.2d 343, 350–352 (La.App. 4th Cir.2005) (affirming trial court's entry of summary judgment in favor of insurer and finding that if plaintiff's intentional tort claims against insured were not barred by the applicable workers' compensation statute, her claims would be excluded from coverage under an identical expected or intended injury exclusion).

Moreover, based upon the factual allegations set forth in the Second Amended Complaint, I conclude as a matter of law

---

1. Even if Eric could state a claim for negligence against Gulfstream under Florida law, the Policy's employer's liability and workers' compensation exclusions would eliminate Catlin's duty to defend and indemnify Gulfstream in the Underlying Action.

that Gulfstream's actions, as alleged, were so inherently dangerous that Gulfstream expected Eric's injury to occur. *See Hartford Acc. and Indem. Co. v. Beaver*, 466 F.3d 1289, 1297 (11th Cir.2006) (citing *State Farm Fire & Cas. Co. v. CTC Development Corp.*, 720 So.2d 1072, 1076 (Fla. 1998)); *see Ohio Cas. Ins. Co. v. Henderson*, 189 Ariz. 184, 939 P.2d 1337, 1343 (1997) (excluding coverage under an identical exception by inferring an insured intended or expected as a matter of law that an injury would occur because "the nature and the circumstances of the insured's intentional act were such that harm was substantially certain to result"). I arrived at this conclusion based upon Eric's allegation that Gulfstream continued operating high-altitude cranes in the midst of hurricane strength winds. Additionally, even after Gulfstream's employees supervising the site allegedly saw the crane cable and spreader collide into multiple structures on site, Eric's supervisor instructed him to stand underneath the heavy load in order to help guide the unstable crane cable and spreader.

After solely looking at the allegations against Gulfstream in the Underlying Action and the language of the Policy, I find that Catlin bore its burden of establishing that Eric's claim falls within the expected or intended injury exclusion. Since Eric's claim is not covered under the Policy by virtue of the expected or intended injury exclusion, it is unnecessary to consider either (1) the two other exclusions or (2) Shannon's and Z.R.'s derivative claims. Accordingly, Catlin has neither a duty to defend or indemnify Gulfstream in the Underlying Action.

## IV. Conclusion

It is hereby

**ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion for Summary Judgment (DE 37) is **GRANTED**;

2. Defendants' Motion for Summary Judgment (DE 38) is **DENIED**;

3. The Clerk of Court shall enter Judgment in Plaintiff's favor;

4. All pending Motions are hereby **DENIED AS MOOT**; and

5. The Clerk of Court shall **CLOSE** this case.